**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CAROL GARDINA, an individual; GEORGE GARDINA, an individual,<br><br>Defendants. | CASE NO: 6:23-cv-1125-JSS-DCI<br><br>Judge: Hon. Julie S. Sneed |

**<u>JOINT FINAL PRETRIAL STATEMENT</u>**

Pursuant to the Amended Case Management and Scheduling Order, Dkt. 78, the Pretrial Order, Dkt. 98, and Local Rule 3.06(b), Plaintiff/Counter-Defendant The Prudential Insurance Company of America ("Prudential"), and Defendants/Counter-Plaintiffs Carol and George Gardina (the "Gardinas") respectfully submit this Joint Final Pretrial Statement. All sections and portions of the Joint Final Pretrial Statement are subject to modification based on the Court's rulings on any pending motions.[1]

[1] The Parties met and conferred on December 19, 24, and 27 via Zoom videoconference, and had numerous additional document exchanges back and forth.

1. Basis for the Court's Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the claims in this action arise under civil law and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Concise Statement of the Action

This is a fraud action.[2] Prudential sues the Gardinas, a husband and wife and insureds under respective Prudential long-term care ("LTC") policies, for defrauding and conspiring to defraud Prudential out of over $1 million in LTC benefits over the course of 20 years. The Gardinas deny these allegations.

The Gardinas counterclaim[3] for breach of contract, alleging Prudential breached their respective LTC policies by failing to pay benefits allegedly owed. Prudential denies it failed to pay benefits owed as no benefits were owed; the Gardinas did not establish an entitlement to benefits under the Policy, and any purported entitlement was on account of the Gardinas' fraudulent misrepresentations and/or fraudulent concealment of material facts regarding their health to/from Prudential.

Prudential brings seven claims for relief.

[2] The operative pleading in Prudential's case is its First Amended Complaint (Dkt. 25).
[3] The operative pleading in the Gardinas case is their counterclaim (Dkt. 33).

Prudential's first two claims for relief are Florida state law claims of fraudulent misrepresentation and fraudulent concealment, respectively, against both defendants.

Prudential's third and fourth claims for relief request a declaratory judgment that no coverage is presently owed to either defendant under their policies.

Prudential's fifth and sixth claims for relief request a declaratory judgment that the Gardinas respective policies be voided/invalidated/terminated.

Prudential's seventh claim for relief is a Florida state law claim for civil conspiracy against the Gardinas.

For its claims, Prudential seeks compensatory damages, punitive damages, interest, attorney's fees, and declaratory relief.

The Gardinas bring two counterclaims for breach of contract under their respective policies. They seek compensatory damages, costs, and attorney's fees pursuant to F.S. § 627.428.

3. Concise Statement of Each Party's Position

a. *Prudential's Position*

Abundant evidence amassed by Prudential establishes the Gardinas defrauded and conspired to defraud Prudential to obtain LTC benefits to which they were not entitled. In furtherance of their scheme, the Gardinas knowingly made repeated false and fraudulent statements and covered up and concealed material facts concerning

their eligibility for LTC benefits and their health. In truth and in fact, neither Carol nor George suffered from any qualifying chronic illness or disability. As a result of their fraud scheme, they cheated Prudential out of over $1 million.

The evidence Prudential will offer at trial to establish the falsity of their claims includes, but is not limited to, (1) claim forms, medical assessments, letters, and recorded phone calls replete with false representations by the Gardinas about their health condition; (2) video surveillance and photographs portraying the Gardinas as functional, able-bodied individuals—capable of driving vehicles, shopping, doing yardwork and home repairs, lifting and carrying items, partying, and recreating at Disneyworld; (3) the testimony of numerous third-party eyewitnesses, including their family members, neighbors, friends, nursing assessors that assessed the Gardinas, and private investigators showing the Gardinas were neither physically disabled nor cognitively impaired; and (4) public records showing Carol Gardina was a real estate broker and sophisticated *pro se* litigator. The evidence points to one conclusion: the Gardinas defrauded Prudential and actively concealed their fraud.

The Gardinas cannot seriously dispute they defrauded Prudential. Instead, Prudential anticipates they will offer three defenses: first, that Prudential should have caught on to their fraud earlier, and that Prudential's claims for relief are therefore barred by the statute of limitations; second, that this Court cannot provide Prudential the equitable relief it seeks and cannot void/invalidate/terminate the Gardinas'

policies; and, third, that Florida's independent tort doctrine bars Prudential's fraud claims.

Each defense is easily rejected. The evidence shows the Gardinas actively misled Prudential and covered up their fraud, evading detection by presenting Carol as bedridden and lying to nursing assessors. Indeed, the Gardinas doubled-down on their fraud at key moments, lulling Prudential into believing the Gardinas were telling the truth, and continued to keep up the charade through April 2023, when they were finally caught. Prudential cannot be faulted for having been lulled into believing its own insureds were telling it the truth, not when the Gardinas fraudulently concealed their fraud from Prudential. The delayed discovery rule and the continuing violation doctrine thus work together to permit Prudential to sue and recover damages for the Gardinas fraud since the inception of their claim, and the statute of limitations does not bar any part of Prudential's claim. F.S.A. § 95.031(2)(a) (statute of limitations for fraud claims does not run until "the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence"); *Bissett v. Ply-Gem Indus., Inc.*, 533 F.2d 142, 151 (5th Cir. 1976) (jury is entitled to find plaintiffs reasonably failed to discovery facts where plaintiffs were misled by defendants); *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007) (continuing violations extend the statute of limitations); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 157

(1984) (permitting equitable tolling if "affirmative misconduct on the part of a defendant lulled the plaintiff into inaction"); *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 990 F. Supp. 2d 1254, 1272 (M.D. Fla. 2013) (To establish fraudulent concealment, Plaintiff must allege and establish: "(1) successful concealment of the cause of action, (2) fraudulent means to achieve that concealment, and (3) plaintiff exercised reasonable care and diligence in seeking to discover the facts that form the basis of his claim"); *Butler Univ. v. Bahssin*, 892 So. 2d 1087 (Fla. Dist. Ct. App. 2004) (finding that the fraudulent concealment doctrine operates to prevent defendants from benefiting from a statute of limitations when their own wrongdoing delays filing of a cause of action).

Further, Prudential is entitled to a judicial declaration that the Gardinas' policies are void/invalid/terminated. Numerous federal courts have held that a federal court can terminate an LTC policy where a jury has found that the insured committed fraud and misrepresented their condition. *Lincoln Benefit Life Co. v. Dallal*, 520 F. Supp. 3d 1237, 1246-47 (C.D. Cal. 2021) (voiding a long-term care insurance policy under the district court's federal equitable powers after jury trial verdict found that insured defrauded insurer), *aff'd* 2022 WL 605709, at *3 (9th Cir. Mar. 1, 2022) (affirming policy invalidation under federal equitable powers); *Shenon v. New York Life Ins. Co.*, 2022 WL 1125520, at *8 (C.D. Cal. Apr. 15, 2022) (following *Dallal*); *see also Transamerica Life Ins. Co. v. Arutyunyan*, 2022 WL

568359, at *1 (C.D. Cal. Jan. 24, 2022) (ordering the invalidation of a long-term care policy so "Transamerica does not face a future threat of fraudulent claims and is compensated for a portion of the losses attributable to Defendants' fraudulent conspiracy"), *aff'd* 93 F.4th 1136 (9th Cir. 2024); *cf. Meyer v. Mass. Mut. Life Ins. Co.*, 2024 WL 2106452, at *6 (D. Colo. Apr. 26, 2024) (denying insured's motion for summary judgment seeking to prevent an LTC insurer from voiding a policy due to the insured's fraud, stating "the remedy [Mass. Mutual] seeks is an equitable one. The question whether that form of relief [voiding the policy] is appropriate is one better made in the context of a jury finding that" the insured "committed fraud"). This court can grant the same equitable relief[4]—and it should, as it would be manifestly unjust to force Prudential to continue to insure two people who deceitfully and systematically cheated it out of over a million dollars in a years-long scheme, especially where, as here, there is no adequate remedy at law and compensatory damages would not cure the future harm Prudential will suffer if it is forced to provide coverage (or deny their claim, engendering further litigation) after Prudential's trust in the Gardinas has been so irreparably damaged.

[4] Florida state law is further clear this Court can grant Prudential the relief it seeks. *See, e.g.*, *Schroeder v. Gebhart*, 825 So. 2d 442, 446 (Fla. Dist. Ct. App. 2002) ("Generally, courts of equity have wide discretion in fashioning remedies . . . ."); *Ganaway v. Henderson*, 103 So.2d 693, 695 (Fla. Dist. Ct. App. 1958) (stating the "power of a court of equity to enforce the cancellation of a contract . . . is well recognized.").

As to the independent tort doctrine, this Court has already rejected the application of this doctrine to this case, noting it only applies where the plaintiff brings *both* a breach of contract claim and fraud claim, which is not the case here. *Prudential Ins. Co. of America v. Gardina*, 2024 WL 2304572, at *3-4 (M.D. Fla. May 16, 2024). Moreover, the policy does not apply to the Gardinas' misrepresentations (indeed, their duty to tell the truth and not commit insurance fraud arises from statute and common law, not contract). F.S. § 817.234(1)(a)(1)-(2) (making it a crime to commit insurance fraud). Notably, the doctrine does not "foreclose a claim of fraudulent misrepresentation," as is the case here, or bar plaintiffs seeking equitable relief (as Prudential does here). *Id.* (citing *Prato v. Hacienda Del Mar, LLC*, 2009 WL 5171768, at *3 (M.D. Fla. Dec. 22, 2009)); *Rubesa v. Bull Run Jumpers, LLC*, 2010 WL 376320, at *3 (S.D. Fla. Jan. 26, 2010) (pre-*Tiara* case explaining the economic loss rule does not bar equitable remedies, like rescission); *Johnston-Gebre v. IH4 Property Florida, L.P.*, 2023 WL 6466333, at *4-5 (S.D. Fla. Sept. 13, 2023) (independent tort doctrine does not bar tort claims that arise from a violation of a statutory duty); *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (fraud allegations distinct from contract where contract did contain language covering the fraud allegations).

Prudential will seek an award from the jury compensating it for the benefits it paid to Carol Gardina over the life of her claim, the money spent investigating the

Gardinas, lost investment income, prejudgment interest, punitive damages, attorneys' fees and costs.[5] If the jury finds the Gardinas committed fraud, Prudential will further seek from this Court a declaration that the Gardinas' respective LTC policies are void/invalid/terminated.

b. *Gardinas' Position*

The Policy has minimal requirements to qualify for benefits. To qualify, an insured must satisfy either of the two benefit triggers under the definition of "Chronic Illness." Under the ADL trigger, an insured must have a loss of the ability to perform, without substantial assistance, at least two (2) ADL's for at least 90 days.

Substantial assistance (hands-on or stand-by) is not required all of the time, but only during the time while the insured is performing the ADL. As such, no one is required to be "within arm's reach" if the insured is not performing an ADL. Thus, the definition of Chronic Illness does not require an insured to need Substantial Assistance all the time. *Finkelstein v. The Prudential Ins. Co. of America*, Case No. 21-00657 at p. 11 (D. Ariz. Jan. 3, 2024).

[5] On December 1, 2022, Prudential learned that the Gardinas—who have a real estate empire of nine (9) confirmed properties, with seven (7) alone in Florida—put five (5) of their Florida real properties for sale. These properties were purchased while the Gardinas were on claim, likely with Prudential's funds. Accordingly, Prudential may seek injunctive relief from this Court to prevent the Gardinas' from liquidating their assets and removing funds from this Court's jurisdiction.

To qualify under the Cognitive Impairment trigger, an insured must require continual oversight that may include cueing by verbal prompting, gestures, or other demonstrations by another person, and which is necessary to protect the insured from threats to health or safety. Here again, the 2022 surveillance is not probative of Carol Gardina's cognitive need for assistance. What is probative is the opinion of PRUDENTIAL's IME physician ,Dr. Sherman, that Carol Gardina needs 24-hour supervision to protect her health and safety

PRUDENTIAL claims the GARDINAS defrauded them into paying Long-Term Care Benefits to Carol Gardina since her 2002 brain aneurysm. However, PRUDENTIAL's entire case is based on surveillance it commissioned in 2022 and its ludicrous contention that the 2022 surveillance is somehow probative of Carol Gardina's lack of need for assistance for every year while on claim. However, PRUDENTIAL has no probative evidence demonstrating that, prior to 2022, Carol Gardina did not need substantial assistance to perform at least two (2) ADL's. At most, PRUDENTIAL can prove only that her level of function observed in the 2022 surveillance was inconsistent with her claimed inability to perform ADL's. Moreover, for many of the years PRUDENTIAL claims to have been defrauded, it paid benefits without requiring an annual assessment as provided in the policy. In July 2016, GG submitted a claim for LTC benefits for bilateral torn rotator cuffs resulting in the need for assistance with three (3) ADL's (bathing, dressing and

toileting). In January 2017, PRUDENTIAL approved George Gardina's claim and paid continuing benefits through July 2020, at which time it terminated his claim for allegedly not complying with PRUDENTIAL's request for an authorization for the release of his medical records.

Despite recognizing that the policy did not obligate George Gardina to comply with its request, as George Gardina had asserted, it nevertheless terminated his claim. PRUDENTIAL refused to consider George Gardina's appeal when he again refused their request to comply. In December 2020, PRUDENTIAL closed George Gardina's claim. However, PRUDENTIAL breached the contract when it terminated benefit payments solely on the basis of George Gardina's refusal to comply with a request for which PRUDENTIAL had no contractual right. Indeed, PRUDENTIAL agrees that the policy lacks a cooperation clause or any other provision requiring an insured to furnish an authorization. Here, PRUDENTIAL did not terminate George Gardina's claim in July 2020 on the basis that he did not medically or otherwise qualify. Rather, it was pure retaliation for contesting PRUDENTIAL's right to insist on an executed authorization. As PRUDENTIAL had no legal or contractual basis to terminate George Gardina's initial claim, PRUDENTIAL breached the contract by withholding benefits from July 2020 through April 2022.

With respect to George Gardina's new claim made in May 2022, it was denied by PRUDENTIAL on September 28, 2022, on the basis that he did not satisfy the

"Chronically Ill" requirement of the Policy. While PRUDENTIAL now asserts that George Gardina fraudulently misrepresented his health with respect to his new 2022 claim, it is unable to prove reliance as a matter of law as it never paid George Gardina any benefits with respect to his new claim.

Finally, the Gardinas contend that some or all of PRUDENTIAL'S claims are barred by the statute of limitations, statute of repose and the Independent Tort Rule.

4. Exhibit List

Prudential's exhibit list is attached as **Exhibit 1.** The Gardinas' exhibit list is attached as **Exhibit 2**.[6] The Parties reserve the right to revise the lists based on the Court's rulings on any pending motions.

The Parties each reserve the right to omit or withdraw any exhibit that the Party has designated for use at trial. The Parties agree that a listing of a document is not an admission that the document is admissible as evidence if introduced by the other Party, unless so stipulated. The Parties have entered into a written stipulation regarding the authenticity of documents (a copy of which is attached hereto as **Exhibit 3**) but reserve the right—as indicated on the exhibit list—to object to the

[6] Prudential provided its exhibit list to the Gardinas on December 11. The Gardinas provided an exhibit list to Prudential on December 27, which their counsel described as "preliminary." The Gardinas did not provide bates ranges to Prudential and refer to exhibits via category (e.g., "Carol Gardina's medical records," "Prudential's Claim File for Carol Gardina") as opposed to individual documents. The Gardinas late provision of their exhibit list, use of block categories, and failure to provide a timely bates range for documents hindered and prejudiced Prudential's ability to review selected exhibits and interpose objections. Prudential reserves the right to submit any additional objections to any exhibit at the time the Gardinas offer the exhibit at trial.

admissibility of the content of certain documents. Any exhibit, once admitted, may be used equally by either party subject to any limitations as to its admission into evidence.

The Parties further stipulate that they will exchange any additional demonstrative or summary exhibits not exchanged as of the filing of this Joint Statement one week before the start of trial, and they waive any objections to the timeliness of any demonstrative or summary exhibit produced one week before trial; however, the Parties reserve all other objections to such demonstrative or summary exhibits for trial. The Parties further agree that the failure to disclose any demonstrative or summary exhibit does not by itself bar any party from using such demonstrative or summary exhibit during trial. The Parties further reserve the right to use any demonstrative or summary aid used by the other Party at any time during the trial (including electronic display). The Parties reserve the right to present electronic copies of demonstrative or summary aids furnished in paper form in connection with the pretrial process. The Parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that exhibit.

5. Fact Witness List

Prudential's fact witness list is attached as **Exhibit 4.** The Gardinas' fact witness list is attached as **Exhibit 5**. These lists are subject to revision based on the

Court's ruling on pending motions.

6. Expert Witness List

Prudential's expert witness list is attached as **Exhibit 6.** This list is subject to revision based on the Court's ruling on pending motions. The Gardinas' Expert Witness List is attached as **Exhibit 7.**[7]

7. Breakdown of the Type and Amount of Monetary Damages

a. *Prudential's Position*

**Compensatory Damages**: Prudential seeks compensatory damages, subject to proof at trial, including but not limited to the total amount Carol Gardina received in LTC insurance benefits from Prudential, which is no less than $1,201,789. Prudential also seeks $12,496 in costs incurred by Prudential in connection with its investigation and discovery of the Gardinas' misconduct. Prudential further seeks

[7] Prudential objects to the Gardinas expert witness list, which was provided to Prudential on December 30, hours before this filing was due. The Gardinas provided "list" is in fact its expert witness disclosure from May 1, 2024, wherein the Gardinas listed numerous treating physicians as non-retained expert witnesses. This disclosure—provided as an expert witness list—does not satisfy the requirements of the Amended Case Management Order, the Pretrial Order, or the Local Rules. The Gardinas are required, by Local Rule 3.06(b)(6), to provide a list of each expert witness with a substance of their testimony. The Gardinas attachment does not do this; rather, it is a simple Rule 26 disclosure listing non-retained experts, without description of their testimony or an indication of if the expert will be called. There is further no column for Prudential to interpose objections. Prudential further notes the Gardinas listed several of these purported experts as witnesses they will call on their *fact* witness list provided as Exhibit 5 to this document. Exhibit 5 is thus controlling: Prudential submits the Gardinas may only call the treating physicians they listed on Exhibit 5. The additional experts listed on the disclosure—but who are not on the Gardinas Exhibit 5—cannot be called as witnesses, as they have not been properly disclosed. Prudential's objections to the Gardinas non-retained expert treating physicians can be found on Exhibit 5; further, Prudential has filed a motion in limine to restrict their testimony. *See* Dkt. 105.

$1,046,692 in prejudgment interest[8], calculated at the legal rate, on the benefit payments and investigation cost damage elements, plus any ensuing post-judgment interest.

**Lost Investment Income**: Prudential seeks $682,067 in lost investment earnings that would have otherwise been realized by Prudential, but-for the payment of LTC insurance benefits to Carol Gardina.

**Punitive Damages**: Prudential seeks punitive damages in an amount subject to proof at trial and findings by the jury.

**Attorneys' Fees and Cost of Suit**: Prudential seeks attorneys' fees and the cost of suit in this matter.

b. *Gardinas' Position*

**Compensatory Damages**: The Gardinas seek compensatory damages, subject to proof at trial, including but not limited to the total amount of LTC policy benefits(including waiver of premium benefits) owed to Carol Gardina since Prudential terminated her benefits on June 14, 2023 and to George Grdina since Prudential terminated his LTC insurance benefits on July 21, 2020.The Gardinas' further seek prejudgment interest, calculated at the legal rate, on the past due benefit payments.

[8] This figure is calculated through the start of trial (February 3, 2025). Prudential reserves the right to seek a higher figure, through the date judgment is actually entered.

**Attorneys' Fees and Cost of Suit**: The Gardinas seek attorneys' fees and the costs of suit in this matter.

8. List of Each Deposition Offered in Lieu of Live Testimony (Except for Impeachment)

Prudential's deposition designations and the Gardinas' counter-designations and objections to Prudential's designations is attached as **Exhibit 8**.

The Gardinas' deposition designations and Prudential's counter-designations and objections to the Gardinas' designations are attached as **Exhibit 9**.

The Parties reserve the right to omit or withdraw deposition selections before or during trial. These lists are subject to revision based on the Court's rulings on pending motions.

9. Concise Statement of Each Admitted Fact

a. Plaintiff The Prudential Insurance Company of America is a New Jersey Corporation with its headquarters in Newark, New Jersey.

b. Defendant Carol Gardina is an individual residing and domiciled in Orlando, Florida.

c. Defendant George Gardina is an individual residing and domiciled in Orlando Florida.

d. Prudential issued two separate LTC insurance policies ("Policies") to Carol Gardina and George Gardina on February 8, 2002: (1) Policy No. 0000022492

to Defendant Carol Gardina; and (2) Policy No. 0000022493 to Defendant George Gardina.

e. To remain eligible for benefits, the insured was required to be assessed by a licensed health care practitioner on an annual basis.

f. Carol Gardina, through and with the assistance of George Gardina, her power of attorney, submitted a claim for benefits under her LTC Policy to Prudential every month between April 2002 through February 2024, attesting and certifying that she had a chronic illness or disability.

g. The claim forms the Gardinas submitted had fraud warnings.

h. Prudential paid Defendant Carol Gardina $1,201,789 in LTC benefits between September 2002 (covering services from April 23, 2002 through August 31, 2002) and July 2023 (covering services through June 13, 2023).

i. On June 14, 2023, Prudential terminated Carol Gardina's claim effective June 13, 2023.

j. In or around July 2016, George Gardina submitted a claim for benefits under his LTC Policy to Prudential.

k. On July 21, 2020, Prudential withdrew George Gardina's claim.

l. In May 2022, George Gardina initiated a new claim.

m. On September 28, 2022, Prudential denied George Gardina's claim.

n. On November 22, 2022, George Gardina appealed Prudential's claim denial.

o. On April 26, 2023, Prudential withdrew George Gardina's appeal.

10. Concise Statement of Each Agreed Principle of Law

a. The LTC Policies are contracts.

b. Interpretation and construction of the LTC Policies is governed by Florida law.

c. Florida law applies to Prudential's first claim for relief (fraudulent misrepresentation), second claim for relief (fraudulent concealment), and seventh claim for relief (civil conspiracy).

d. Equitable principles and federal common law apply to Prudential's third and fourth claims for relief (declaratory judgment: no coverage as to Carol Gardina, George Gardina) and fifth and sixth claims for relief (declaratory judgment: entire policy void/invalid/terminated as to Carol Gardina, George Gardina).

e. Florida law applies to the Gardinas' first and second claims for relief (breach of contract).

f. To establish fraudulent misrepresentation under Florida law, the plaintiff must show the defendants made (1) a false statement concerning a material fact; (2) knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party

acting in reliance on the representation. *Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010).

g. Liability for fraudulent misrepresentation can be based on material omissions. *White v. Grant Mason Holdings, Inc*., 741 F. A'ppx 631, 636 (11th Cir. 2018) (citing *Gutter v. Wunker*, 631 So.2d 1117, 1119 (Fla. Dist. Ct. App. 1994)).

h. To establish fraudulent concealment under Florida law, the plaintiff must show that the defendants (1) concealed or failed to disclose a material fact; (2) knew or should have known the material fact should be disclosed; (3) knew concealment would induce the plaintiff to act; (4) had a duty to disclose the material fact; and (5) the plaintiff detrimentally relied on the misinformation. *Gaza v. West Florida-Mht, LLC*, 2016 WL 561242, at *2 (M.D. Fla. Feb. 12, 2016) (citing *R.J. Reynolds Tobacco Co. v. Martin*, 53 So.3d 1060, 1068 (Fla. Dist. Ct. App. 2010)).

i. To establish civil conspiracy under Florida law, the plaintiff must establish a "(1) a conspiracy between two or more parties, (2) to do an unlawful act or a lawful act by unlawful means, (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the act performed pursuant to the conspiracy." *Cohen v. McGuire*, 2016 WL 3188889, at *9 (M.D. Fla. June 8, 2016) (*Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006)); *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993).

j. An actionable conspiracy requires an actionable underlying tort or wrong. *Florida Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993); *Wright v. Yurko*, 446 So.2d 1162 (Fla. 5th DCA 1984).

k. To sustain an action for breach of contract under Florida law, a plaintiff must establish the following elements: "(1) a valid contract, (2) a material breach, and (3) damages." *De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 113 F. Supp. 3d 1221, 1223 (M.D. Fla. 2014) (citing *Havens v. Coast Florida, P.A.*, 117 So.3d 1179, 1181 (Fla. 2d DCA 2013); *Vega v. T–Mobile USA. Inc.,* 564 F.3d 1256, 1272 (11th Cir.2009); *Deauville Hotel Mgmt., LLC v. War*d, 219 So. 3d 949, 953 (Fla. Dist. Ct. App. 2017).

l. A jury may award punitive damages to punish a party for acting with malice, moral turpitude, wantonness, willfulness or reckless indifference to the rights of others. *Brown v. Ford*, 900 So.2d 646, 648 (Fla. 1st DCA 2005).

11. <u>Concise Statement of Each Issue of Fact</u>

The Parties submit the following issues of fact that remain contested for trial purposes in accordance with the requirements of Local Rule 3.06(b)(11) and the Amended Case Management and Scheduling Order, Dkt. 78. The Parties reserve the right to raise additional factual issues at trial, notwithstanding their absence from the following list of contested issues. This reservation of rights ensures that all relevant

facts can be properly established during trial, even if not specifically listed below. The Parties agree that the final jury instructions, as approved by the Court, will determine the factual issues the jury will be asked to resolve.

a. Whether Carol Gardina, alone or in coordination with her power of attorney, George Gardina, fraudulently misrepresented material facts regarding her health, and/ or fraudulently concealed material facts regarding her health, to/from Prudential in connection with Carol Gardina's claim for LTC benefits between the years 2002 and 2024;

b. Whether George Gardina, alone or in coordination with his wife, Carol Gardina, fraudulently misrepresented material facts regarding his health, and/ or fraudulently concealed material facts regarding his health, to/from Prudential in connection with George Gardina's claim for LTC benefits between the years 2016 and April 2023;[9]

c. Whether Prudential was lulled, misled, or otherwise delayed by the Gardinas from discovering the Gardinas' fraudulent misrepresentations and/or fraudulent concealment and/or their conspiracy regarding the same until April 2023.

d. Whether the Gardinas fraudulently concealed their conduct from Prudential and employed fraudulent means to achieve that concealment, such that

[9] The Gardinas do not agree this is an issue of fact.

Prudential was unable to discover the facts giving rise to its claims before June 14, 2019 despite its reasonable care and diligence in seeking to discover such facts.

e. Whether Prudential breached Carol Gardina's LTC Policy when it denied her claim in July 2023.

f. Whether Prudential breached George Gardina's LTC Policy when it denied his initial claim in July 2020 and/or his new claim in September 2022.

g. Whether the Gardinas breached the duty to cooperate implied by law in their respective Policies.

h. Whether Prudential relied to its detriment by paying Carol Gardina benefits for each and every alleged misrepresentation.

i. Whether any or all Prudential's claims are barred by the statute of limitations.

j. Whether any or all Prudential's claims are barred by the statute of repose.

12. <u>Concise Statement of Each Issue of Law</u>

The Parties submit the following issues of law that remain contested for trial purposes in accordance with the requirements of Local Rule 3.06(b)(12) and the Amended Case Management and Scheduling Order, Dkt. 78. The Parties reserve the right to contest additional legal issues at trial, notwithstanding their absence from the following list.

a. Prudential contends this Court may, following a jury verdict finding the Gardinas' fraudulently misrepresented, fraudulently concealed material facts, and/or conspired to do either or both of the foregoing regarding Carol Gardina and/or George Gardinas health in connection with their respective claims under their LTC Policies, void/invalidate/terminate Carol and/or George Gardina's LTC Policies with Prudential. The Gardinas disagree.

b. Prudential contends that the statute of limitations applicable to Prudential's Florida state law claims for fraudulent misrepresentation, fraudulent concealment, and civil conspiracy is inapplicable due to equitable tolling as a result of the Gardinas' misconduct, the continuing violation doctrine, and/or the delayed discovery doctrine. The Gardinas disagree.

c. Prudential contends the Gardinas' LTC Policies, Florida state law, common law, and the LTC industries standards, customs, and practices imposed a duty on the Gardinas cooperate with Prudential throughout the LTC claim process, and that this duty included a duty to communicate honestly and openly with Prudential, to tell the whole truth, disclose all material facts, and provide Prudential the needed authorizations to request medical records. Prudential further contends that a breach of the duty to cooperate is an affirmative defense to the Gardinas breach of contract claims. The Gardinas disagree.

d. Prudential contends the Gardinas are equitably estopped from maintaining their respective claims for breach of contract. The Gardinas disagree.

e. The Gardinas contend Florida's independent tort doctrine bars Prudential's fraud claims. Prudential disagrees.

f. The Gardinas contend that, absent a special relationship, they had no duty of disclosure. Prudential disagrees.[10]

13. <u>Pending Motions or Other Unresolved Issues</u>

a. *Daubert* Motion

i. Dkt. 86: Defendants Carol and George Gardina's Motion to Exclude or Limit the Report and Testimony of Plaintiff's Expert Witnesses, Andrew Woo, M.D., Charles Levy, Ph.D., and Kyle Victor.

*b. Motions in Limine*

i. Dkt. 100: Prudential's Motion in Limine No. 1 to Admit Evidence Regarding Worldlife Home Care, Inc.

ii. Dkt. 101: Prudential's Motion in Limine No. 2 to Limit Evidence and Testimony Regarding SSDI Benefit Standards, Legal

[10] Prudential respectfully notes this Court disagrees as well. *The Prudential Ins. Co. v. Carol Gardina, et al.*, 2024 WL 5145914, at *6 (M.D. Fla. Dec. 17, 2024) (finding the Gardinas had an "ongoing duty to disclose the accurate nature of their health and ability to perform activities of daily living")

Standards Applicable to Disability Benefits, Legal Standards Applicable to Continental Benefits.

iii. Dkt. 102: Prudential's Motion in Limine No. 3 to Limit Evidence and Testimony Regarding George Gardina's Unreported Health

iv. Dkt. 103: Prudential's Motion in Limine No. 4 to Exclude Evidence on Alleged HIPAA Violations by Prudential

v. Dkt. 104: Prudential's Motion in Limine No. 5 to Limit Evidence and Testimony Regarding Carol Gardina's Ability to Testify

vi. Dkt. 105: Prudential's Motion in Limine No. 6 to Limit Treating Physician Testimony

vii. Dkt. 106: Prudential's Motion in Limine No. 7 to Exclude of Other Insurance Claims and Lawsuits

viii. Dkt. 107: Prudential's Motion in Limine No. 8 to Exclude Reference to Prudential's Corporate Profits or Financial Condition

ix. Dkt. 108: Prudential's Motion in Limine No. 9 to Exclude Irrelevant Testimony, Argument, and Evidence Relating to Prudential's Long-Term Care Business

x. Dkt. 109: Prudential's Motion in Limine No. 10 to Exclude Irrelevant Testimony, Argument, and Evidence Relating to Exclude References to Reserves

c. *Injunctive Relief*

i. Consistent with footnote 5 *supra*, Prudential may seek injunctive relief from this Court to prevent the Gardinas'—who recently put 5 real properties belonging to their real estate empire—up for sale from liquidating their assets and moving funds outside this Court's jurisdiction.

14. Statement of the Usefulness of Further Settlement Discussions

Pursuant to Local Rule 3.06(a)(1), Amended Case Management and Scheduling Order, Dkt. 78, p. 4, § 9(b), the Parties engaged in good-faith efforts to settle this matter during their meeting to prepare this Joint Pretrial Statement. Despite these substantive discussions, the Parties have been unable to resolve their differences. While the Parties remain willing to discuss settlement further, they are not optimistic settlement is a possibility.

15. Anticipated Length of Trial[11]

The Parties anticipate needing 10 court days, as originally requested in the

[11] "Anticipated length of trial based on issues remaining at the time of the filing of the Joint Final Pretrial Statement must be included as a separate line item in the Joint Pretrial Statement." Dkt. 78, p. 5.

Parties first case management report. Dkt. 42, p. 3.

16. Joint Proposed Set of Jury Instructions

Pursuant to the Amended Case Management and Scheduling Order, Dkt. 78, p. 6, § 11, and the Pretrial Order, Dkt. 98, the Parties attach to this Joint Final Pretrial Statement a single jointly-proposed set of preliminary jury instructions. The proposed set of preliminary jury instructions is attached as **Exhibit 10.**

Each party reserves the right to modify its requested jury instructions in light of the evidence introduced at trial and any rulings the Court may enter before the conclusion of trial.

17. Proposed Verdict Forms

Pursuant to the Amended Case Management and Scheduling Order, Dkt. 78, p. 6, § 11, and the Pretrial Order, Dkt. 98, the Parties attach to this Joint Final Pretrial Statement separate jury verdict forms. Despite their best efforts, the Parties could not agree to a single jointly-proposed verdict form.

Prudential's proposed verdict form is attached as **Exhibit 11.**

The Gardinas' proposed verdict form is attached as **Exhibit 12.**

18. Joint Proposed List of Voir Dire Questions

Pursuant to the Amended Case Management and Scheduling Order, Dkt. 78, p. 6, § 11, and the Pretrial Order, Dkt. 98, the Parties attach to this Joint Final Pretrial Statement a joint list of voir dire questions. Despite their best efforts, the Parties

were unable to agree on a fulsome joint list; accordingly, Prudential submits its own separate proposed supplemental list of voir dire questions.

The Parties Joint Proposed List of Supplemental Voir Dire Questions is attached as **Exhibit 13.** Prudential's Proposed Supplemental Voir Dire Questions is attached as **Exhibit 14**.

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Dated: December 30, 2024

Respectfully submitted,

*/s/ Andrew Azarmi*
Andrew Azarmi (CA ID No. 241407)
(*pro hac vice*);
Dentons US LLP
1999 Harrison Street, Suite 1210
Oakland, CA 94612
Telephone: 415 882 5000
Email:andrew.azarmi@dentons.com

Anthony Moscato, FBN 1024502
Dentons US LLP
101 JFK Parkway
Short Hills, NJ 07078-2708
anthony.moscato@dentons.com

*Attorneys for The Prudential Insurance Company of America*

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Dated: December 30, 2024

Respectfully submitted,

/s/Richard Benrubi
Richard M. Benrubi (FBN 796573)
BENRUBI LAW, P.A.
6501 Congress Avenue, Suite 118
Boca Raton, FL 33487
Office: (561) 910-8650
Email: RBenrubi@benrubilaw.com
cgarcia@benrubilaw.com

*Counsel for Defendants Carol Gardina and George Gardina*

## FILER'S ATTESTATION

I hereby attest that all signatories listed above, on whose behalf this stipulation is submitted, concur in the filing's content and have authorized the filing.

Dated: December 30, 2024

/s/Andrew S. Azarmi
Andrew Azarmi