UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

    Plaintiff,

v.                                                    Case No: 6:23-cv-1125-JSS-DCI

CAROL GARDINA and GEORGE
GARDINA,

    Defendants.
_____/

## ORDER

Defendants move to exclude the testimony of Plaintiff's experts Andrew Woo, M.D., Ph.D., Charles Levy, M.D., and Kyle Victor pursuant to Federal Rule of Evidence 702. (Motion, Dkt. 86.) Plaintiff opposes the Motion. (Dkt. 89.) Upon consideration, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

This action arises out of a dispute regarding alleged long-term care benefits insurance fraud between Plaintiff The Prudential Insurance Company and its insureds, Carol and George Gardina. (Dkt. 25 ¶¶ 1–7.) The parties have conducted discovery, and the case is set for a jury trial in February 2025. (Dkt. 78.) Defendants seek to exclude the following experts retained by Plaintiff to provide expert witness testimony: (1) Dr. Andrew Woo, who will provide testimony about Mrs. Gardina's cognitive and functional capacities; (2) Dr. Charles Levy, who will provide testimony about the

Gardinas' degrees of physical disability; and (3) Kyle Victor who will provide testimony regarding the standards and practices involved in handling long-term care insurance claims. (Dkts. 86, 89 at 3–4.)

## APPLICABLE STANDARDS

In determining the admissibility of expert testimony under Federal Rule of Evidence 702, "[t]he court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007); *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting *Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010)). A determination of admissibility requires findings that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert*]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The party offering an expert has the burden of satisfying each of these elements by a preponderance of the evidence. *Id.*; *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). However, courts must not "improperly use the admissibility criteria to supplant a plaintiff's right to a jury trial: 'Vigorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Moore*, 995 F.3d at 850 (quoting *Daubert*, 509 U.S. at 596).

## ANALYSIS

The basic *Daubert* requirements of "qualification, reliability, and helpfulness [are] distinct concepts[,] and the courts must take care not to conflate them." *Moore*, 995 F.3d at 851 (quoting *Frazier*, 387 F.3d at 1260).

### A. Reliability of Dr. Woo's and Dr. Levy's Opinions

Defendants challenge the reliability of Dr. Woo's and Dr. Levy's opinions. (Dkt. 86 at 7.) Upon consideration, the court finds each opinion to be sufficiently reliable.

*Daubert*'s reliability prong concerns "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Seamon v. Remington Arms Co.*, 813 F.3d 983, 988 (11th Cir. 2016) (quoting *Daubert,* 509 U.S. at 592–93). However, "[s]tandards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)). In determining reliability, the district court must focus "solely on principles and methodology, not on the conclusions that they generate." *Seamon*, 813 F.3d at 988 (quoting *Daubert,* 509 U.S. at 595).

Dr. Woo is a board-certified neurologist with over 28 years of experience. (Dkt. 89-1 at 5–6.) He has served on the clinical teaching faculty at the University of California Los Angeles Medical Center and Cedars Sinai Medical Center for over 25 years. (*Id*. at 6.) Dr. Levy is a physiatrist with over 31 years of experience in physical medicine and rehabilitation. (*Id*. at 90–91.) He was the Chief of Physical Medicine & Rehabilitation Service for the North Florida and South Georgia Veterans Health System for 20 years. (*Id*. at 90.) In formulating their opinions, the doctors reviewed Defendants' medical records, Defendants' claim and benefit eligibility assessment forms, and video surveillance of Defendants obtained by Plaintiff. (*Id*. at 72–84, 161–73.)

After reviewing these materials, Dr. Woo opined that based on his training and experience: (1) Mrs. Gardina did not have a severe cognitive impairment as defined by the policy by the time she presented for a neurological exam on June 26, 2002; and (2) Mrs. Gardina's functional and cognitive presentation to her various healthcare providers and benefit eligibility assessors is inconsistent with the video surveillance or any of the other activities she was observed as able to perform—including, for example, carrying a mattress, pushing a wheelbarrow, carrying lumber on multiple occasions, and gardening. (*Id*. at 29–31.) Dr. Levy opined that based on his training and experience: (1) Mrs. Gardina most likely regained her functional abilities within the first 3 to 6 months to 1 year after her April 3, 2002 subarachnoid hemorrhage; (2) at the time of the video surveillance conducted in 2012, and likely much earlier, Mrs. Gardina did not need substantial assistance to perform two or more activities of daily

living as defined by the policy; (3) Mrs. Gardina's physical functionality exhibited on the video surveillance conducted in 2012, 2016, and 2022 are inconsistent with the severe impairment that Mrs. Gardina displayed during the independent medical examination conducted in 2005; and (4) despite Mr. Gardina's rotator cuff pathology, he remained capable of performing all activities of daily living based on the video surveillance.  (*Id.* at 113–15.)

In a conclusory manner, Defendants maintain that the opinions are "speculative, unreliable, and are connected to the evidence only by the *ipse dixit* of the experts." (Dk. 86 at 7.)  Defendants do not identify what they contend is speculative or unreliable about either opinion.  Nevertheless, Defendants rely upon *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) to support their contentions.  This case is distinguishable.  In *Joiner*, the Court upheld the trial court's ruling that expert testimony was inadmissible after the trial court reviewed the scientific research studies relied upon by the experts to formulate their opinions.  522 U.S. at 145–47.  The trial court judge concluded the experts' opinions were not sufficiently supported by the studies the experts relied upon.  *Id.* at 145.  Based on this ruling, the Court reasoned that

> Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

*Id.* at 146. Here, the doctors are not relying upon scientific research studies. Instead, they formulated their opinions based on their training and experience and a review of Defendants' medical records, claim forms, and Defendants' functional performance in the video surveillance.

Defendants also argue that the doctors' methodology "is based solely on the usual recovery time for a brain aneurism" and "extrapolates from the 2022 surveillance that [Mrs. Gardina's] activity level in prior years is inconsistent with her claimed disability." (Dkt. 86 at 7.) As Plaintiff points out, this argument ignores both doctors' decades of clinical and teaching or managerial experience in their respective fields, as well as the doctors' reports, which contain a detailed explanation of their conclusions based on the medical records, claim file documents, and surveillance video. *See Kumho Tire, Co.*, 526 U.S. at 156; *Geyer v. NCL (Bahamas) Ltd.*, 203 F. Supp. 3d 1212, 1217 (S.D. Fla. 2016) (finding a medical doctor's opinions are based on reliable methodology when the doctor reviewed the defendant patients' files and had over twenty years of experience in his field) (collecting cases); *United States v. Rosin*, No. 8:05-cr-143-T-24MAP, 2006 WL 5334585, at *2 (M.D. Fla. Jan. 23, 2006) (same) (collecting cases); *see also* Fed. R. Evid. 702 advisory committee's note (2000 amends.).

> The [c]ourt accepts as a general proposition that a physician need not necessarily examine a patient, interview that patient, or speak with the patient's treating physician(s) in order to render opinions regarding diagnosis, prognosis, course of treatment[,] and perhaps even causation. In other words, the [c]ourt does not deem it necessarily fatal that an expert medical witness has relied on medical records alone to reach a specific causation opinion.

*Haller v. AstraZeneca Pharm. LP*, 598 F. Supp. 2d 1271, 1294–95 (M.D. Fla. 2009) (footnote omitted). Therefore, upon consideration, the court finds these opinions to be sufficiently reliable.

### B. Kyle Victor

Kyle Victor is an insurance claims consultant with 15 years of experience in the health care, quality, risk, case management, and insurance claims industry. (Dkt. 86-3 at 5.) Since 2019, he has been an insurance claims consultant for a Fortune 500 financial services company. (*Id.* at 116.) He also has a Master of Business Administration in health care management and is a registered nurse. (*Id.* at 118.) In formulating his opinion, Mr. Victor reviewed Defendants' policies, Defendants' medical records, Defendants' claim and benefit eligibility assessment forms, video surveillance of Defendants obtained by Plaintiff, Mr. Gardina's audio call recordings to Plaintiff, Plaintiff's complaint, and Defendants' counterclaim. (*Id.* at 110–13.) After reviewing these materials, Mr. Victor opined that based on his training and experience: (1) Plaintiff followed the usual and customary claims handling standards and practices in the long-term care insurance industry, and (2) the policies Plaintiff issued to Defendants followed HIPAA and Internal Revenue Section 7702(b) regulations for tax-qualified contracts. (*Id.* at 91–110.)

Defendants challenge the relevancy, helpfulness, and reliability of Kyle Victor's opinions. (Dkt. 86 at 7–11.)

1. Relevance and Helpfulness

Defendants, without citing any supporting authority, maintain that Mr. Victor's opinion is irrelevant and unhelpful because whether Plaintiff complied with industry standards or the role of its third-party administrators working on the claim is not probative of whether Defendants were truly disabled as defined by their policies. (*Id.* at 8.) Plaintiff, citing cases in support, maintains that Mr. Victor's opinions are relevant and helpful to rebut Defendants' statute of limitations argument that Plaintiff failed to act with due diligence to discover Defendants' alleged fraud before 2023. (Dkt. 89 at 11 (citing *Travelers Indem. Co. of Ill. v. Royal Oka Enters., Inc.*, 2004 WL 3770571, at *2–3 (M.D. Fla. Aug. 20, 2004); *Guenther v. Novartis Pharm. Corp.*, 2013 WL 1278089, at *3 (M.D. Fla. Mar. 28, 2013); *Regions Bank v. Kaplan*, 2017 WL 1148322, at *3–4 (M.D. Fla. Mar. 24, 2017)). Plaintiff also maintains that Mr. Victor's opinions are relevant to rebut Defendants' breach of contract counterclaims. (Dkt. 89 at 12.)

"An expert's testimony is helpful if it 'assists the trier of fact, through the application of scientific, technical, or specialized expertise, [(1)] to understand the evidence or [(2)] to determine a fact in issue.'" *Rivera v. Ring*, 810 F. App'x. 859, 863 (11th Cir. 2020) (quoting *Frazier*, 387 F.3d at 1260). The Eleventh Circuit has held that "the standard to determine helpfulness is whether the expert testimony concerns matters that are beyond the understanding of the average lay person." 810 F. App'x. at 863. Since the parties dispute whether Plaintiff exercised due diligence throughout the claims handling process to discover Defendants' alleged fraud, the court concludes

that Mr. Victor's opinion is relevant and helpful to the jury "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see Nat'l Indem. Co. of the S. v. Disc. Rock & Sand, Inc.*, No. 21-10081-CIV-GRAHAM/GOODMAN, 2024 WL 1329378, at *4 (M.D. Fla. Mar. 6, 2024) ("It is widely established that specialized knowledge of the insurance industry custom and practice is a proper subject of expert testimony, as the average juror is not likely to be familiar with the practices and procedures involved in insurance claims handling.") (collecting cases); *Royal Marco Point 1 Condo Ass'n*, No. 2:07-cv-16-FtM-99SPC, 2011 WL 470561, at *2 (M.D. Fla. Feb. 2, 2011) ("[T]he standards for handling insurance claims [are] not a matter of such common knowledge that a jury would not benefit from an expert's opinion."); *see also Travelers Indem. Co. of Ill.*, 2004 WL 3770571, at *2 (concluding when "the substance of the expert's testimony concerns ordinary practices and trade customs which are helpful to the fact-finder's evaluation of the parties' conduct against the standards of ordinary practice in the insurance industry, his passing reference to a legal principle or assumption in an effort to place his opinions in some sort of context will not justify the outright exclusion of expert's . . . [testimony] in its entirety.")

### 2. Reliability

Defendants maintain that Mr. Victor's methodology is unreliable because he narrates unsupported facts and offers legal conclusions. (Dkt. 86 at 8–11.) Plaintiff responds that Mr. Victor's opinions apply his many years of insurance industry experience to the facts of the case. (Dkt. 89 at 12–13.) Mr. Victor's nonscientific opinion about whether Plaintiff followed the usual and customary long-term care

insurance claims handling standards and practices is reliable based on his training and experience, and the court has already found this testimony to be relevant and helpful to the jury in determining Defendants' statute of limitations defense. *Schoenthal Fam., LLC*, 555 F.3d at 1338 ("A district court may decide that nonscientific expert testimony is reliable based upon personal knowledge or experience."). While Defendants may disagree with Mr. Victor's opinion, they may address any disagreement during cross-examination. *See Worley v. State Farm Mut. Auto. Ins. Co.*, 3:12-CV-1041-J-MCR, 2013 WL 6478297, at *3 (M.D. Fla. Dec. 10, 2013) (finding argument that expert's opinion was unreliable because it was "contrary to the facts" is not a proper basis for exclusion and, instead, should be explored during cross-examination); *see also Seamon*, 813 F.3d at 988.

Defendants also challenge Mr. Victor's opinions that the policies followed HIPAA and Internal Revenue Code Section 7702(b) regulations for tax-qualified contracts. Specifically, Defendants maintain that the opinions contained in paragraphs 217 and 218 of Mr. Victor's report should be excluded as impermissible legal opinions. (Dkt. 86-3 at ¶¶ 217, 218.) The court agrees. These opinions are inadmissible legal conclusions because the interpretation of an insurance contract is a matter of law. *See Gas Kwick, Inc. v. United Pac. Ins. Co.*, 58 F.3d 1536, 1538–39 (11th Cir. 1995) ("Under Florida law, interpretation of an insurance contract is a matter of law to be decided by the court.") Therefore, the court grants the motion to the extent that Mr. Victor cannot testify about the conclusions found in paragraphs 217 and 218 of his report.

## CONCLUSION

Accordingly, Defendants' Daubert Motion to Exclude or Limit the Report and Testimony of Plaintiff's Expert Witnesses (Dkt. 86) is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** insofar as Kyle Victor's opinions in paragraphs 217 and 218 are excluded. The Motion is otherwise **DENIED**.

**ORDERED** in Orlando, Florida, on January 8, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record