**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation,** | |
| Plaintiff, | Case Number: 6:23-cv-1125-JSS-DCI |
| v. | Orlando, Florida<br>January 9, 2025<br>2:00 p.m. - 2:52 p.m. |
| **CAROL GARDINA, an individual; GEORGE GARDINA, an individual,** | |
| Defendants. | |

**TRANSCRIPT OF PRETRIAL HEARING**
**BEFORE THE HONORABLE JULIE S. SNEED**
**UNITED STATES DISTRICT JUDGE**

APPEARANCES:

For the Plaintiff: Andrew Azarmi, Esquire
Anthony Moscato, Esquire
DENTONS US LLP
1999 Harrison Street
Suite 1210
Oakland, California 94612

For the Defendants: Richard Mark Benrubi, Esquire
BENRUBI LAW
6501 Congress Avenue
Boca Raton, Florida 33487

Proceedings recorded by real-time mechanical stenography. Transcript produced by computer-aided transcription.

Stenographically reported before:
Karla Hyland, RPR, FCRR, FPR-C
(813) 476-1641 | hylandtranscripts@outlook.com

401 West Central Boulevard, Suite 4600, Orlando, Florida 32801

P R O C E E D I N G S

**THE COURT**: Hello. Good afternoon, everyone.

**MR. AZARMI**: Good afternoon, Your Honor.

**THE COURT**: We are here for the case Prudential Insurance Company of America versus Carol and George Gardina, and it's Case Number 6:23-cv-1125.

Let me ask the lawyers to state your appearances for the record, starting with counsel for plaintiff.

**MR. AZARMI**: Andrew Azarmi for -- sorry, Andrew Azarmi for plaintiff, The Prudential Insurance Company of America, Your Honor.

**MR. MOSCATO**: Good afternoon, Your Honor. Anthony Moscato on behalf of Prudential.

**THE COURT**: Very well.

**MR. BENRUBI**: Good afternoon, Your Honor. Richard Benrubi on behalf of the Gardinas.

**THE COURT**: Good afternoon, again, to all of you.

So we're here for your pretrial conference in your case. We are set for trial in the month of February, for the trial term that begins February 3rd. We have these pretrial conferences to be sure that once we do proceed to trial, that everyone is on the same page and that we are trying the same case.

I do want to let you know that I've taken a look at your joint pretrial statement, and I understand that you-all

expect the trial to take about ten days; is that correct?

**MR. AZARMI**: Yes, Your Honor. That estimate -- we still believe that estimate -- sorry. Yes, Your Honor, we still believe that estimate is accurate. We, of course, would try to be as efficient as possible, and it's possible that it could be less than ten, but we don't anticipate anything more than ten being required. So that estimate is still accurate as to Prudential.

**THE COURT**: All right. And the Gardinas?

**MR. BENRUBI**: Judge, I would have to agree, without knowing how long they anticipate being with their case in chief. So, you know, I don't know if they're going to be four days, five days, six days, seven days, but our presentation will not be as lengthy as theirs.

**THE COURT**: All right. I already have a case set for trial in February, as we just set one earlier today. And so the earliest, really, this case is going to be able to go to trial is going to be March. I can set aside that amount of time for the trial in March. And looking at my calendar, we can get started on March 17th.

All right, from the plaintiff's side?

**MR. AZARMI**: Yes, Your Honor, that should -- yes, Your Honor, that should be fine.

**THE COURT**: And on the defense?

**MR. BENRUBI**: Yes, Your Honor, that's fine.

**THE COURT**: All right. So that is the date that we'll expect to proceed to trial.

I know that you-all had a mediation in the case back in May 2024. Are you-all continuing those settlement discussions?

**MR. AZARMI**: Your Honor, as part of the meet-and-confer process, in preparing the pretrial submissions, we did have discussions about settlement. We don't believe that any sort of formal ADR would be productive, in all honesty. There's just a large delta between the way we view the cases, so ...

**THE COURT**: All right. And, Mr. Benrubi?

**MR. BENRUBI**: I have to agree with counsel.

**THE COURT**: I do encourage you-all, nonetheless, to continue those settlement discussions, and if you do reach a resolution, please let us know as soon as possible. Otherwise, you know, we'll go forward with the trial.

We know that there are a number of motions that are pending, those motions in limine that were recently filed. The responses are due very soon to those. I believe there are some responses that are due tomorrow. So we'll take those up before the trial occurs so that you-all have opportunity to conform your evidence to those rulings.

Is there anything you'd like to say about any of those motions currently, from Prudential?

**MR. AZARMI**: No, Your Honor. Do you anticipate that you would hold a hearing on those, or do you think you'll rule on the papers?

**THE COURT**: I have reviewed the motions and I don't believe a hearing is needed.

**MR. AZARMI**: Understood. Thank you, Your Honor.

**THE COURT**: But if there's something you want to point out in particular, feel free to do so right now. Otherwise, they did not seem, to me, to need an additional hearing.

**MR. AZARMI**: Understood. Thank you, Your Honor. There's nothing additional I need to point out right now. Thank you.

**THE COURT**: All right. From the defense side?

**MR. BENRUBI**: Yes, Your Honor. As you know, Prudential filed the ten motions in limine. We had a meet-and-confer about them before they were filed. Prudential wanted to get them on the record. I'm going to be able to agree to maybe half of them.

And, I don't -- you read them, Your Honor. Some of them seem to be -- to me, to be not proper subjects for a motion in limine. One seeks to admit evidence.

So I'll brief those, but I would ask for a little more time, Your Honor. I just came off of another federal court case. I had a 20-page brief due last night. I have to

go back to Fort Lauderdale tonight, and they're due tomorrow, and considering the trial date isn't until March, can I please have another week to respond to those?

**THE COURT**: Until next Friday.

**MR. BENRUBI**: Thank you, Your Honor.

**THE COURT**: All right. So that will give you some additional time. And, you know, you don't need to be extremely lengthy in those responses. The motions themselves were relatively short and not very extensive. I think, you know, we all can understand the point of the motions, and so I would just encourage you not to need to go to the -- up to the page limit on each of those.

**MR. AZARMI**: Your Honor, we had our oppositions due tomorrow. We can meet that deadline, or would you like us to wait for the week since the defendants will be waiting?

**THE COURT**: Well, if you're ready to go ahead and file your responses, you can do so. If you believe that you'll benefit from the additional time and file them on the 17th, that's fine as well.

**MR. AZARMI**: I think we'll file them on the 17th. I just didn't want to jam you up.

**THE COURT**: No. That's fine. That's totally fine.

**MR. AZARMI**: Okay. Thank you, Your Honor.

**THE COURT**: All right. So the responses to the motions in limine will be due on the 17th.

Now, we have the witness list that you each have filed. On the part of Prudential, do you have any objections to witnesses of the defense?

**MR. AZARMI**: The only -- Your Honor, the only objection that we have is -- is to the expert witnesses. There was a list of expert witnesses, and we have a motion in limine that's been filed on that. They're all treating physicians, and I think our motion in limine spells out our objection, which is based on Rule 26. And there was no reports for any of these treating physicians. It's true that treating physicians may testify without a report, but there's limitations on that, and that's what our motion in limine is about.

I don't know that it's that complex or controversial for Your Honor, probably, but we do have a motion in limine that directly addresses those witnesses in terms of them being expert witnesses.

**THE COURT**: Now, there was a supplement filed with respect to those witnesses; is that correct?

**MR. AZARMI**: I don't believe so, Your Honor.

**THE COURT**: Supplemental report?

**MR. BENRUBI**: That's subject of a motion. Well, those are the experts.

I'm sorry, Your Honor. We filed the motion to strike supplemental reports that they're going to be briefing, which I think is due tomorrow or Monday.

**THE COURT**: All right.

**MR. AZARMI**: That's correct. I believe that's a motion by the defendants to -- seeking to strike supplemental expert reports that we did, which supplemented the prior expert reports to bring in new information that came to light subsequent to the Rule 26 disclosure deadline, which is what's required and best practice and appropriate under Eleventh Circuit precedent. I think our opposition will spell that out, and we will -- we will be filing that timely.

**THE COURT**: All right. And then you're saying that you also have objection to some defense witnesses that you contend were not properly disclosed?

**MR. AZARMI**: Correct.

**THE COURT**: Okay. As a separate issue?

**MR. AZARMI**: Correct. And that's a motion in limine, which is already on file, which directly relates to treating physicians.

And we're not objecting to the treating physicians appearing at trial at all. It's just that they're limited in what they can testify about, because these are not experts that were retained, who prepared reports. And, in fact, they did not do the disclosure required by even Rule 26 for treating physicians.

**THE COURT**: They'll be able to testify about their treatment?

**MR. AZARMI:** Correct.

**THE COURT:** All right.

**MR. AZARMI:** Correct.

**THE COURT:** And, Mr. Benrubi, are you contending they'll testify about something beyond their treatment?

**MR. BENRUBI:** Judge, respectfully, I need to review the motion and brief it, and I'll be prepared to respond.

**THE COURT:** Sure.

**MR. BENRUBI:** Thank you.

**THE COURT:** All right. That's fine.

Do you, Mr. Benrubi, have any objections to Mr. Azarmi -- pronounce your name, Mr. Azarmi?

**MR. AZARMI:** Azarmi.

**THE COURT:** Azarmi. Okay.

Mr. Benrubi, do you have any objections to Mr. Azarmi's witness list?

**MR. BENRUBI:** One moment, Your Honor, please.

Judge, just in terms of repetitiveness and redundancy, which I think could be handled at trial. It's not anything that I think should be the subject of a motion.

The other thing is we conferred about perhaps --

**THE COURT:** So it's better if you-all get in the habit of standing up when you're talking, because obviously that's one of the requirements for being here in federal court.

Also when we do have the jury in here, you know, it

is, again, even more important that you stand up whenever you're talking. So you may as well just go ahead and stand up when you're talking here today. Okay?

**MR. BENRUBI**: And I was good until this last round, Your Honor. I'm a little out of practice in this Zoom world we're in.

**THE COURT**: That's okay.

**MR. BENRUBI**: We also had a conferral about witnesses appearing remotely, and I don't know if the Court has a policy on that or if we just need to file motions if we can't agree. If you have any insight on that at all, it would be welcome.

**THE COURT**: Are the witnesses unavailable?

**MR. BENRUBI**: No. Just for convenience.

**THE COURT**: Yes, from the plaintiff's side?

**MR. AZARMI**: Your Honor, we did have -- and we lodged objections in our pretrial submissions attached to the final pretrial conference statement -- objections to attendance at trial remotely for the reasons that are spelled out in the rules and the comments to the rules.

**THE COURT**: If you-all had reached an agreement about that, that would be fine, but because there is not an agreement about it, they do need to appear in person. All right.

**MR. BENRUBI**: That goes for both sides?

**THE COURT**: For both sides.

**MR. BENRUBI**: Thank you.

**THE COURT**: That's correct.

Now, anything else related to the witness list, from either side?

**MR. BENRUBI**: Nothing from the defendants, Your Honor.

**MR. AZARMI**: Yeah, nothing -- nothing for you right now, Your Honor.

**THE COURT**: Okay.

**MR. AZARMI**: I think we're -- yep.

**THE COURT**: All right. And now on to the exhibits. From the plaintiff's side, do you have any objections to the -- well, there are lots of objections, actually. There's a chart full of objections to each side's exhibit lists.

Are there any objections based on a failure to disclose the exhibits from plaintiff to -- related to the defense exhibits?

**MR. AZARMI**: Your Honor, one of the things that we raised in our statement was that because we do not yet have Bates numbers for the -- for the defendants' trial exhibit list, we were not able to ascertain some of the exhibits, whether they were previously disclosed. They were described in general manners; and, therefore, we did not -- we have not been able to ascertain whether they were previously disclosed.

There were things on the trial exhibit list that we received from defendants that did seem to be not disclosed, but

we really couldn't tell because of the description.

And we had asked Mr. Benrubi for the Bates numbers prior to today so that we could go through and make that analysis. We did not receive that. And I'm happy to continue to meet and confer on that piece, but there are objections we lodged for failure to disclose based on the general description of categories that we received, because we did not know whether that was something new or whether it was something that had been previously disclosed.

**THE COURT**: You-all had a meet-and-confer where you -- in a meeting where you exchanged the exhibits; is that correct?

**MR. AZARMI**: Yes. We exchanged the exhibit lists.

**THE COURT**: Well, I don't think that is what my pretrial order required. Let me take a look.

**MR. AZARMI**: And we identified, Your Honor -- we identified our -- every document on our list, we identified by Bates numbers so that the defendant had access to it.

**THE COURT**: So you really were supposed to premark the exhibits at that meeting on the 20th, or on or before the 20th. So you're contending that that was not done?

**MR. AZARMI**: We did not premark the exhibits yet, Your Honor, because we were still meeting and conferring on the exhibits --

**THE COURT**: Well, I'm just not going to be able to

take up any objections to the failure to disclose beyond today, because really you-all were supposed to have done that earlier. That's the whole point of today.

I've had too many situations where everybody's in agreement, everything's working out just great, and then you get to the trial, and, you know, all of those agreements come apart and combust because you don't -- you didn't really have a meeting of the minds with respect to those exhibits.

So I'm not going to consider, after today, the fact that you don't believe that you had these exhibits disclosed in discovery, so -- all right.

**MR. AZARMI**: There are some -- there are a few exhibits, Your Honor, on defendants' trial exhibit list where we did object on the fact that they were not disclosed, because we could tell what they were, including -- they're listed as 74 through 80, which are deposition transcripts from a completely different case.

**THE COURT**: 73 through 80?

**MR. AZARMI**: Yes, on defendants' list.

**THE COURT**: Yes.

**MR. AZARMI**: 73 through 80.

**THE COURT**: Okay.

**MR. AZARMI**: And they are deposition transcripts from a completely different -- from different cases.

**THE COURT**: Right. All right.

**MR. AZARMI**: And they don't involve the Gardinas in any capacity.

**THE COURT**: Okay.

**MR. AZARMI**: They're just -- somehow -- we did not disclose them in discovery. Somehow he got his hands on them and he wants to try to use them. We objected on multiple grounds. But in addition to the evidentiary grounds, like relevance and 403, we objected on the fact that they were not also disclosed in discovery.

**THE COURT**: Mr. Benrubi?

**MR. BENRUBI**: Judge, those depositions --

**THE COURT**: And if you -- I'm sorry to give you more instructions, but the court reporter would like you to speak into the microphone.

**MR. BENRUBI**: Yes. Judge, those depositions are a matter of public record. They were part of a case that Prudential was involved in, Finkelstein versus Prudential; the same type of issues where the witnesses that they intend to call in this case -- that they called in that case, they're going to call in this case. So we have some deposition transcripts for impeachment.

**THE COURT**: All right. For impeachment purposes?

**MR. BENRUBI**: Yes, Your Honor.

**THE COURT**: All right. Well, that's different than needing to provide this as substantive evidence in this case.

If you're using it for impeachment purposes, that's a different situation.

Anything else, Mr. Azarmi, related to the defendants' exhibits that were not disclosed?

**MR. AZARMI**: Exhibits on defendants' trial exhibit list, Number 61 through 65, were not disclosed to us -- 61 through 65.

**THE COURT**: Mr. Benrubi?

**MR. BENRUBI**: Judge, I'll check on that, and if they weren't disclosed, then they're going to be withdrawn.

**THE COURT**: All right. Yes. If they were not disclosed, we're not going to be able to have those admitted. Unless, for some reason, those would also be for impeachment purposes. This doesn't look like impeachment evidence. And so, yeah, if you would take a look at that, and then withdraw them if they were not disclosed.

Anything else from the plaintiff's side on exhibits of the defendant?

**MR. AZARMI**: The only thing would be, Your Honor, is 82, and it's not because it's not disclosed. It's because it's an IRS notice that we think is -- should not be, you know, subject to admission as testimony. It's a legal document.

**THE COURT**: 81 on the defendants'?

**MR. AZARMI**: 82, I'm sorry. 82, IRS notice.

**THE COURT**: Mr. Benrubi?

**MR. BENRUBI**: Yes, Your Honor. Again, that came from the Finkelstein case, and if I lay the proper foundation, then, yes, I want to get that into evidence. But certainly for purposes of impeachment, it's a viable exhibit.

**THE COURT**: And you're agreeing that it was not disclosed previously?

**MR. BENRUBI**: It wasn't disclosed. It was mentioned and I think attached, if I'm not mistaken, to the summary judgment. Again, Judge, there's so many papers flying around. But I will -- you know, we need further conferral, and we will have further conferral about these issues and clean it up.

**THE COURT**: And, again, I just want to reiterate to you-all, all of those discussions, it would have been better if they had happened prior to today. This is the day, again, that we are working to be sure that we don't have any surprises. And so go ahead and confer. If it was not produced previously, it will be excluded except for impeachment purposes. Okay?

All right. And now from Mr. Benrubi, do you have any objections to plaintiff's exhibits that -- in particular, based on failure to disclose them?

**MR. BENRUBI**: No. I don't think there's any issue there, Your Honor.

**THE COURT**: And I notice that you-all had entered into a stipulation so that you will not need to have any document custodians; is that correct?

**MR. AZARMI**: Yes, Your Honor, that's correct. We had a stipulation as to authenticity, and it's in the pretrial submissions. Yes, Your Honor.

**THE COURT**: All right. Very well. That's helpful. That is helpful.

Now, in terms of the number of witnesses, Mr. Azarmi, how many witnesses do you anticipate calling on the plaintiff's side?

**MR. AZARMI**: Yes, Your Honor. We anticipate approximately 15 to 20. But I will say that a few of those are very short, with, you know, like -- as short as, like, 15 minutes, some of them, because they're just really on the discrete points, and there may be a few that do not actually testify live anyways.

**THE COURT**: And then in terms of experts, is that including your experts?

**MR. AZARMI**: Yes, including the experts, Your Honor.

**THE COURT**: Okay. And then from the defense, how many witnesses do you anticipate?

**MR. BENRUBI**: Six to eight, Your Honor.

**THE COURT**: Is that including your experts as well?

**MR. BENRUBI**: Yes.

**THE COURT**: Okay. I did issue, as we've mentioned and touched upon earlier, a pretrial order marked preliminary pretrial order. I let you know there that we'll likely start

at 9:00, and we'll end at 5:00 every day for the convenience of the court staff. We'll take an hour for lunch, and we'll take two 15-minute breaks for the convenience of everyone during the proceedings.

We will impanel eight jurors. Two of those people will be alternates. All of them will deliberate. All right? That really is helpful in case, for some reason or another, someone gets sick and is unable to continue serving, we'll still have a sufficient number for the jury.

For voir dire, I will conduct the voir dire asking some very preliminary questions of each of the members of the jury. There are questions that we can give you that I normally ask in each trial, really just asking them about their background; their name; their residence; how long they've lived there; their highest level of education -- and we'll, again, provide a copy of this to you-all -- their occupation; marital status; if they are married, their spouse's occupation; their children; their children's ages and occupations; and whether they've had any military service.

I also ask them about prior legal training and whether they've been sued in court and whether they were a witness or a party and about their prior jury service.

I reviewed the voir dire you-all have proposed, and the joint proposed voir dire is fine. You-all agree upon it.

Mr. Azarmi, you-all agree about this, the joint

proposed supplemental voir dire?

**MR. AZARMI**: That's correct, Your Honor. We also had submitted some proposed voir dire that we did not -- we had not come to an agreement on but that we felt was relevant to the case and the issues. In particular, I think that getting to experience with insurance is going to be important to ensure a fair panel in our view, Your Honor.

**THE COURT**: All right. And Mr. Benrubi, you-all agree about the joint proposed supplemental voir dire?

**MR. BENRUBI**: Yes, Your Honor. And the -- the proposed supplemental questions that we prepared didn't quite make it to the filing on the joint pretrial stipulation. I think I have 12 supplemental questions, if I may submit those?

**THE COURT**: Are you aware of this, Mr. Azarmi?

**MR. AZARMI**: Yes, Your Honor. We did not receive them by the pretrial deadline, pretrial submission deadline. I don't think we have them now.

**MR. BENRUBI**: Judge, I really don't want to get into this back-and-forth, because we really do get along very well. But it was a matter of them being on the west coast, me being on the east coast, and they wanted to get it filed. They were short-staffed. And that was the only document that didn't make it to the attachment.

**THE COURT**: All right. Okay. Well, I will take a look at that whenever you -- you will go ahead and file that

also by next Friday.

**MR. BENRUBI**: Yes, Your Honor.

**THE COURT**: And then Prudential's proposed supplemental voir dire, some of the questions overlap with the questions that I mentioned to you that I am going to ask. I have looked at and reviewed the proposed supplemental voir dire. This is in document number 112-14.

I don't think most of these questions are appropriate or helpful, but I will allow -- I'm going to tell you the ones that I will allow: 17, where you're talking about particular experience with Prudential. So 17, and then you have parts A and B. I will also allow question number 20, where you're asking about whether or not the jury pool knows anything about this lawsuit, where they learned about the lawsuit, and if they've formed any opinion about the lawsuit. So that's 20-A, B -- A and B. I will separately ask the question about C.

I have another list of questions that I generally ask about whether or not they know any of the witnesses, whether they know any of the court staff or me, and so that's part of the questioning there.

Yes, sir?

**MR. BENRUBI**: The agreement on the joint questions, will those be coming from Your Honor? You'll address the jury with those?

**THE COURT**: You know, I can ask these questions, and

then we will turn it over to Prudential to ask the questions in your supplement. And then any questions that are allowed from the defense side, you can ask those questions. Okay?

**MR. AZARMI**: And to be clear, Your Honor, when you do turn it over to us, you want us to limit ourselves to the questions that you ruled are appropriate?

**THE COURT**: That's right. That's correct.

**MR. AZARMI**: Just making sure, Your Honor.

**THE COURT**: Yes. Good question.

Now, I will also allow 23, asking about experience dealing with fraud issues; 24, experience dealing with contracts; 25, questions about -- talking -- you're basically explaining what the lawsuit is about, Prudential's allegations, and whether or not considering those allegations, whether it would prevent the potential jurors from being fair and impartial. So that's permitted as well.

Yes, sir?

**MR. BENRUBI**: May I object to that one?

**THE COURT**: 25? Yes, what is your objection?

**MR. BENRUBI**: Judge, I don't have it in front of me, but it sounds like a question where they're asking the jury to prejudge the evidence. If we give you this evidence, can you find for us.

**THE COURT**: Well, it's really asking whether -- it's talking about the allegations. It's saying what Prudential's

allegations are, and it's then asking if there's anything about the allegations that would prevent someone from being fair and impartial.

**MR. BENRUBI**: I do believe that's an improper question. So I do think that asks them to prejudge our allegations, can you find for us.

**THE COURT**: That's not what the question says, but I understand your objection, but I will allow 25.

I will allow 26 as well. There's questions about -- there's a discussion about surveillance and whether or not there are any impressions about a company doing or engaging in surveillance and would you hold it against Prudential that it conducted surveillance. I will allow 26.

You have an objection to that one as well?

**MR. BENRUBI**: I do. Same objection.

**THE COURT**: All right. And that is noted.

And then 28 is permitted as well. It's asking about beliefs related to whether or not the potential jury pool has had experience or whether they have any beliefs about insurance companies, insurance brokers, or others involved in the insurance business that makes you think that you would not be able to fairly and impartially decide the case in which an insurance company is a party.

**MR. BENRUBI**: No objection.

**THE COURT**: All right. That's the only one -- that's

the only additional question that's permitted.

The other questions, I just don't think are helpful or they may be prejudicial and just really probing into matters that won't help us select a fair and impartial jury.

**MR. BENRUBI**: Your Honor, was your last one 28 or did I miss one?

**THE COURT**: So the last one that is permitted is 28.

**MR. BENRUBI**: Okay.

**THE COURT**: The questions go up to 35.

**MR. BENRUBI**: Yes, Your Honor.

**THE COURT**: Okay. And I'll take a closer look at the ones you've objected to as well, Mr. Benrubi. But my thinking is that 25 and 26 would be allowed. But I'll take a closer look at those in light of your objections.

**MR. BENRUBI**: Thank you, Your Honor.

**THE COURT**: Now, anything else on that point?

**MR. AZARMI**: No, Your Honor. Thank you.

**THE COURT**: Now, there will also be a point in the trial where I will tell the jury about the case. I take that statement generally from the pretrial statement that you-all have provided. Your pretrial statement does summarize each side's position of the case, and you have a concise statement of the action.

Now, it's possible that the first two paragraphs of the pretrial statement might be sufficient to tell the jury

about the case, if you-all have that available?

**MR. AZARMI**: Yes, Your Honor. Give me one second.

**MR. BENRUBI**: I'm on page three, Your Honor, at the bottom, "Concise Statement"?

**THE COURT**: And I have it as page two, paragraph two, "Concise Statement of the Action."

**MR. BENRUBI**: Oh, yes, Your Honor.

**THE COURT**: If you will just review those first two paragraphs and let me know if you think that is sufficient to tell the jury about the case.

**MR. AZARMI**: For Prudential, Your Honor, we're fine with that. I think it is sufficient for a neutral statement.

**THE COURT**: All right.

**MR. BENRUBI**: Agreed, Your Honor.

**THE COURT**: Okay. So that's what I will tell the potential jury pool about the case.

I will also give you an opportunity to introduce yourselves to the jury. So you'll introduce yourselves, and then you will also list the witnesses that you expect to call. And then once you've done that, I will ask the potential jury pool whether they're familiar with any of those people. Okay?

Now, you-all made a number of deposition designations. I want to go back to that for a moment. Are those deposition designations for impeachment purposes? What purpose do you anticipate that being used for, plaintiff's

side?

**MR. AZARMI**: Your Honor, those were not only for impeachment. Some of those -- for example, there's deposition testimony from the defendants, which would be direct evidence in our case, because testimony from the defendants is direct -- is direct evidence. And then there's some --

**THE COURT**: How do you anticipate getting that into evidence?

**MR. AZARMI**: Through a videotape -- playing the videotape and showing the transcript simultaneously.

**THE COURT**: So I think we talked about whether or not you would have any people that are appearing that are not live, and so we wouldn't have any people that are not live.

**MR. AZARMI**: Well, the only -- so for the defendants, I believe we can use the deposition video, their testimony, directly in our case without actually calling them to the stand. So that's how we're presenting for the defendants.

We put the third party -- we put some third-party deposition testimony designations there in an abundance of caution, and also in the event that we were able to reach a stipulation, we would be satisfied presenting certain witnesses via deposition testimony.

**THE COURT**: You can call the defense -- the defendants in your case in chief, unless they're not available. I'm not sure why you would rely upon the deposition.

Let me hear from Mr. Benrubi on that issue.

**MR. BENRUBI**: I do -- based upon my knowledge of the law, Your Honor, I do think it is proper, what counsel wants to do, because you could read a deposition of a party for any purpose. Of course, we don't want to get into redundancy and all that kind of stuff. But we listed their corporate representative as a deposition designation.

**THE COURT**: So you plan to do the same thing?

**MR. BENRUBI**: Yes.

**THE COURT**: All right. So your earlier objection related to the appearance of --

**MR. BENRUBI**: Remote.

**THE COURT**: -- remote appearance. This is an exception to that?

**MR. BENRUBI**: Yes. Yes. Yeah, it's not hearsay under the rule.

**THE COURT**: All right. As long as you both agree, and we'll double-check the case law related to that issue.

**MR. AZARMI**: Yeah. I think we're in agreement on that, Your Honor. And just to add just a slight clarification, which you maybe don't even need, but hopefully it's helpful, I think what we meant by the remote testimony was those would be live witnesses. It's just that remote transmission --

**THE COURT**: Understood.

**MR. AZARMI**: -- versus a deposition.

**THE COURT**: Understood. That's helpful. Thank you.

**MR. AZARMI**: Thank you, Your Honor.

**THE COURT**: All right. And from Mr. Benrubi, do you have any other use for the deposition designation?

**MR. BENRUBI**: No, Your Honor.

**THE COURT**: And we will not have the court reporter also duplicate that testimony when you arrive at that time where you want to introduce that testimony. You-all are in agreement about that?

**MR. BENRUBI**: Will or will not?

**THE COURT**: Will not.

**MR. BENRUBI**: That's fine.

**MR. AZARMI**: Correct.

**THE COURT**: All right. Anything else on that topic?

**MR. AZARMI**: No, Your Honor.

**MR. BENRUBI**: No.

**THE COURT**: Okay. Now, I will also allow you-all to, of course, make opening statements. You know, you don't need to be exhaustive about that, but I am also not going to time you on that opening statement. So take the time that you believe is needed, but, you know, try to be less than 20 minutes. That would be better.

I know that you-all have agreements related to demonstrative exhibits and that you plan to show those to each other prior to the trial?

**MR. AZARMI**: Correct, Your Honor. That was in the pretrial statement.

**THE COURT**: Yes. All right. And when do you anticipate showing those to each other? Will you just do that the morning of trial?

**MR. BENRUBI**: Yes, Your Honor.

**MR. AZARMI**: Well, we had actually put, Your Honor, one week before. And I'm happy to talk to Mr. Benrubi about that because we're flexible. We're just -- reasonableness and practicality is kind of where we view it. We had stipulated to a week before they were to be used in court, but I think we would certainly be flexible on that with Mr. Benrubi.

If we want to enter into a new stipulation then, maybe we'll lodge that with Your Honor, and then that way, you'll know it. We probably are fine with one or two court days in advance of use. And I think the same thing goes for opening slides, I would imagine, because usually those are not really done until --

**THE COURT**: Let's go with the one-week time period, again, to avoid any surprise or, you know, confusion and, just again, make sure everybody is on the same page.

So if you will go ahead and exchange or at least send pictures of the demonstratives one week in advance, that I think will be helpful.

**MR. AZARMI**: Sure. Thank you, Your Honor.

**THE COURT**: All right. Now, again, on the pretrial order, everyone is required to provide the final exhibit list by December 30th. At this time, I'm -- I imagine that you may cull those lists down a bit based on some of the discussions that we've had here. So I'm going to give you until February 14 to provide the final exhibit list for trial. This will be the final cull-down exhibit list.

**MR. AZARMI**: Your Honor, do you have a preference regarding numbering? I know that I saw you had some guidance about marking joint -- with different -- the different colored tabs. But in terms of numbering, do you have any preference or should we just work that out?

**THE COURT**: That's fine for you-all to work out. We -- you do need to use the exhibit tags --

**MR. AZARMI**: Right.

**THE COURT**: -- from the Court's website. But if you have joint exhibits, you know, that's totally fine if you want to use the joint exhibits.

**MR. BENRUBI**: Your Honor, yes, and that's what I'm contemplating. Because I know that there's overlap with some of the exhibits that each side listed. So we'll get together further and confer, put together a joint exhibit list, and then a paired-down plaintiff's and defendants'.

**THE COURT**: That's fine. And then you do need to submit an original and three copies of the exhibit list and two

copies of the exhibits on the day of trial. One of them will be for our official court record and then one of them I will use to follow along.

Then we'll also need the original and two copies of the witness list on the day of trial. And this will not, of course, be adding additional witnesses. What you might do is you might remove some of those people. So that is also due on the day of trial. And you need to exchange those witness lists by the last business day before the trial date.

We do have this electronic equipment available for your use at trial. It's really helpful. The witnesses -- I'm sorry, the jury can take a look at that, the exhibits right there using the monitors at their seats. The same thing with the witness that's testifying will be able to view the exhibits right there.

What you can do is you'll conduct the questioning, if you want, from the second podium there. There's a microphone there, and then you can use the exhibits there. Or if you have an assistant that's helping you with the technology, you know, then you would be at the first microphone and then the assistant can assist you back there.

You can feel free to contact the court deputy clerk, Ms. Farey, to test out the electronic equipment and test compatibility with your own equipment at your and her convenience. You can set up a separate appointment for that.

All right. Now, are there any other matters?

**MR. AZARMI**: Your Honor, what was -- I'm sorry, who did you want us to contact?

**THE COURT**: The court deputy clerk, Ms. Farey. That's Ms. Farey right there.

All right. Now, are there any other matters that we have not discussed today that you would like to discuss?

**MR. AZARMI**: None for Prudential, Your Honor.

**THE COURT**: We do have the motion for reconsideration, and we are -- we understand that you do contest the Gardinas' eligibility, as far back as 2020 -- 2003; is that correct?

**MR. AZARMI**: That's correct, Your Honor. And really what -- and we will be opposing the motion for reconsideration. We'll file our opposition to that so you can read that.

But really the only point that we had -- we made was that the jury decides what the ultimate damages are. Like, if they find that the fraud started in 2006, in our view, that would be certainly more than justified. If they found that it actually started in 2003 or 4, then that would be within their prerogative. That's a pure factual issue that we believe the jury is the one that -- the only one that can really decide that, and that was our only point.

But if you're asking whether we would put that the jury can decide that the fraud started in 2003, yes, correct.

**THE COURT**: All right. And, Mr. Benrubi?

**MR. BENRUBI**: And then, Judge, I filed the motion for reconsideration for one simple reason, is because Your Honor's order, you said that you didn't consider certain evidence from 2004 and 2005 regarding the statute of limitations because Prudential seemingly conceded that time period from 2002 through 2005, so that was the purpose of that.

**THE COURT**: All right. And, obviously, if this is an issue in dispute, those experts would be -- their views on that topic would be relevant and due for consideration.

All right. Mr. Benrubi, did you have anything else that we should talk about that we have not discussed already?

**MR. BENRUBI**: No, Judge. And I -- you know, we submitted competing verdict forms, and I imagine you took a look at them. And we have a pretty wide variance of position as to how a jury is to decide the fraud.

Prudential seems to -- and, in fact, they submitted an instruction that we objected to that says something -- once a liar, always a liar. This policy -- these policies, the way they work is every month was a different month. They had to make a submission. They had to pay them. And so I think we have to ask a jury to decide -- not just on a blanket basis about the fraud, but we need to ask them specifically. Because some years, they didn't even conduct an annual assessment and they paid.

So, you know, I think that I'm just raising that because I think it's a very important position.

**THE COURT**: All right. We'll take a look at that.

**MR. AZARMI**: Yes, Your Honor. And I'm not sure if -- I did have a question about how you -- and when -- if you hold a charging conference to rule on jury instructions and verdict forms, or at what point in time and how you tend to do that.

**THE COURT**: Right. We will be reviewing those jury instructions likely from the very beginning of the trial. We'll reserve some time in the afternoon at the -- you know, once you've presented some of the witnesses, we'll reserve some time so that we can go over those jury instructions. And we'll likely revisit those, not every single day, but pretty regularly at the end of the day. Okay?

**MR. AZARMI**: Understood. Yeah. So I'm not going to respond. I think we had a written brief that responds on the verdict form, and I won't respond now. I know that that's something that we'll have to discuss as things progress.

**THE COURT**: Sure.

**MR. AZARMI**: Thank you, Your Honor.

**THE COURT**: I will tell you, on another topic, the jury selection process. So, you know, we'll call -- I think we'll call 28 people?

**THE COURTROOM DEPUTY**: About, approximately, yes.

**THE COURT**: About 28 peoples, perhaps a little more

since we have two weeks, but at least 28 people. One through, you know, however many chairs that we have here, we'll take up the very beginning. We're only choosing eight, but we'll question the whole group. We'll go through all of our questioning with the entire group of people.

Once I've, you know, done my questioning, you'll have an opportunity to do your questions. And then we'll let the jury move out of the room to have a stretch break, and then we'll start the process where you-all can do your striking.

I will go plaintiffs, then defense, plaintiff, then defense. We'll alternate, so that you can determine whether or not you want to strike anyone. I will allow back strikes, so that if, you know, we've made a certain number of strikes, you still have challenges to make available to you, and you haven't stricken someone that you'd now like to strike, that's fine. You can also strike that person if you have now determined that you should do so.

The first eight, whoever that is, that will be the jury composition. So, again, you want to really focus on, I think, you know, the very early part of this group, because that's likely to be the group.

We do have a lot of people that will tell us that, you know, they're busy, they have child care issues, and they -- or it's too far to drive. This is a big district. So a lot times, those people will be stricken. So it's possible

we'll get to the people in the back of the courtroom.

**MR. AZARMI**: So does Your Honor -- so does Your Honor conduct the -- you make the hardship excuse -- excuses by yourself or do we propose whether we think someone should be excused for hardship? Or how does the hardship --

**THE COURT**: And those are for cause based on --

**MR. AZARMI**: Yeah.

**THE COURT**: -- you know, their child care needs, transportation, language barriers, things like that. Those are cause challenges. And you, of course, have an unlimited number of those.

**MR. BENRUBI**: I mean, there's different degrees of hardship. So is the Court going to handle the hardship issue by herself, or are we going to question the jurors as well?

**THE COURT**: Well, there is a part of my questioning where I'm asking them whether there's any reason why they could not serve, and then usually there's a flurry of people that have their hands raised in response. And then they'll come up to side bar, and we'll address each reason, one by one. We'll address it, meaning we'll hear it. But then we'll -- if it is, you know -- then we'll let them all go out while we make the decisions about who you-all want to strike for cause.

I will generally allow those strikes for cause, generally speaking. You know, they will let us know. I think the jury -- they're pretty clear about, you know, whether or

not they can serve and are willing to serve. And if they cannot serve for the reasons that they're expressing, they will likely be stricken for cause. We're not going to, you know, force them to be here.

**MR. AZARMI**: Understood, Your Honor. And our -- when peremptories are exercised, that is outside of the presence of the pool?

**THE COURT**: Yes, because they're going to be outside stretching their legs at that time.

**MR. AZARMI**: Perfect. Okay. Just making sure.

**MR. BENRUBI**: And clarification, Your Honor. We are going to have eight jurors deliberate, so eight are going to decide --

**THE COURT**: That's right.

**MR. BENRUBI**: -- and it has to be unanimous?

**THE COURT**: That's right.

All right. And we will have a brief moment to confer if you have any additional questions or something that comes to mind that we haven't discussed today that you want to discuss, we can talk about it before the trial starts.

Okay? All right. Well, it's good to see everyone. Take care and safe travels.

(Proceedings concluded at 2:52 p.m.)

**CERTIFICATE OF REPORTER**

I, KARLA HYLAND, RPR, FCRR, FPR-C, DO HEREBY CERTIFY that the foregoing is a correct transcript of the record of proceedings in the above-titled matter.

DATED this 16th day of January 2024.

/s/Karla Hyland

Karla Hyland
Registered Professional Reporter
Federal Certified Realtime Reporter
Florida Professional Reporter-Certified