# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Corporation,

                Plaintiff,

v.

CAROL GARDINA, an individual, and GEORGE GARDINA, an individual,

                Defendants.

Case No. 6:23-cv-01125-JSS/DCI
Judge: Hon. Julie S. Sneed

_____/

## DEFENDANTS' RENEWED MOTION FOR DIRECTED VERDICT, OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL

Defendants, CAROL GARDINA and GEORGE GARDINA (collectively, "Gardinas"), respectfully request judgment as a matter of law under Fed. R. Civ. P. 50(b), or, in the alternative, a new trial under Fed. R. Civ. P. 59. In addition to the arguments set forth below, Defendants incorporate by reference and expressly preserve all arguments and objections they raised in pretrial proceedings and during trial. Defendants state the following:

### INTRODUCTION

Defendants seek judgment in their favor as a matter of law, or alternatively a new trial because: (i) Prudential's claims were untimely and barred under the statute of limitations; (ii) the Court gave incorrect and misleading instructions on the continuing tort exception to the statute of limitations—compounded by a confusing

1

verdict form—which prevented the jury's proper consideration of the statute of limitations; and (iii) Prudential's claims of fraud with respect to George Gardina's policy fail for lack of evidence based on Prudential's own testimony.

From the evidence presented, no reasonable jury could determine that Prudential brought its fraud claims against Carol Gardina within the applicable statute of limitations. It did not. Rather, the undisputed evidence establishes that Prudential was on notice of all material facts upon which it relies to support its claims no later than 2016, when Prudential first obtained video surveillance footage of Carol Gardina. The activities seen in the 2016 video were identical to that shown in a 2022 video. Prudential's argument defies common sense and the overwhelming evidence that it was apprised of facts sufficient to cause a reasonable insurance company to suspect that it had suffered harm under Carol Gardina's policy long before the statute of limitations ran. The evidence establishes Prudential's failure to file and pursue its fraud claims within the applicable statute of limitations.

The Court's jury instructions and confounding verdict form swallowed the statute of limitations defense, effectively removing its consideration from the jury. There exists no authority extending the continuing tort doctrine to the claims in this case. Yet the Court treated the continuing tort doctrine as maxim. Eleventh Circuit and Florida precedent reveal that application of the continuing tort doctrine is far more circumspect than the jury was instructed here.

In essence, the Court accepted Prudential's argument that the Gardina's rote submission of monthly claim forms each constituted separate fraudulent

2

misrepresentations, resetting the statute of limitations back to 2002 each and every month. But Prudential never pled or alleged facts to support its theory, and the Court's overbroad instruction on the continuing tort doctrine led the jury to rule in favor of Prudential on unpled claims.

Moreover, the sequencing of the questions on the verdict form physically placed consideration of the continuing tort doctrine, an exception to the statute of limitations, before consideration of the statute of limitations itself. The verdict form presented inaccurate and truncated guidance on the continuing tort doctrine and tipped the scales in favor of a finding of continuing torts. The verdict form was prejudicial, inconsistent with the instructions, and served to subvert Defendants' key statute of limitations defenses, tainting the jury's consideration of same. At most, the evidence established that the monthly claim forms –the only evidence girding Prudential's overreaching continuing tort doctrine arguments—were part of an original completed act, i.e., the improper insurance claim, and not separate independent misrepresentations that served to prevent Prudential from discovering the Gardian's alleged fraud.  This was a substantial error that resulted in a grave miscarriage of justice. The jury's verdict as to the lapse of the statute of limitations and the application of the continuing tort doctrine are legally unsupportable, and judgment as a matter of law in the Gardinas' favor, or at minimum a new trial, is required.

Moreover, Prudential did not show the existence of a material fact to support its fraud claim with respect to George Gardina's policy. The greater weight of the evidence did not support the jury's verdict as to these claims. Accordingly, George

3

Gardina is entitled to judgment as a matter of law as to fraud claims asserted under

George Gardina's policy.

ARGUMENT

I.    **Applicable Legal Standards**

a.  **Rule 50(b)**

Federal Rule of Civil Procedure 50(b) requires judgment of a matter of law be

entered where the jury's verdict is not supported by sufficient evidence. *United States v.*

*Amin Radiology*, No. 5:10-CV-583-OC-PRL, 2015 WL 403221, at *2 (M.D. Fla. Jan.

28, 2015), *aff'd sub nom. U.S. ex rel. Florida v. Amin Radiology*, 649 Fed. Appx. 725 (11th

Cir. 2016) (quoting Fed. R. Civ. P. 50(b)). The Court must review all evidence and

draw all reasonable inferences in favor of the nonmoving party. *Id.* Only the sufficiency

of the evidence matters for the court's consideration—the jury's findings are irrelevant.

*Connelly v. Metropolitan Atlanta Rapid Transit Authority,* 764 F.3d 1358, 1363

(11th Cir. 2014).

A renewed motion for judgment as a matter of law under Rule 50(b) must be

based upon the same grounds as the original request made under Rule 50(a) at the

close of the evidence and prior to the case being submitted to the jury. *Doe v. Celebrity*

*Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004).

b.  **Rule 59**

In addition to filing a renewed Rule 50 motion, a party may also move for a

new trial under Federal Rule of Civil Procedure 59. The motion can be granted for any

reason that a new trial has previously been granted in a federal action. Fed. R. Civ. P. 59(a)(1)(A). These reasons include where a verdict is against the weight of the evidence, an excessive damages award, substantial errors in admitting or rejecting evidence or in jury instructions, or an otherwise unfair trial. *Long v. E. Coast Waffles, Inc.*, No. 2:16-322-FtM-PAM-MRM, 2018 WL 11236649, at *1 (M.D. Fla. June 13, 2018).

Unlike a Rule 50 Motion, "in a motion for a new trial the judge is free to weigh the evidence." *Id.* at 1254 (quotation marks omitted). The court should grant a motion for new trial where the verdict is against the clear weight of the evidence or will result in a miscarriage of justice. *Prato v. Hacienda Del Mar, LLC*, No. 2:08-CV-883-FTM-29, 2011 WL 2746218, at *1 (M.D. Fla. July 14, 2011) (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)).

A new trial is also warranted where there is an error in the jury instructions or verdict form. *Davis v. Apopka*, No. 615CV1631ORL37LRH, 2020 WL 4757047, at *3 (M.D. Fla. Apr. 28, 2020), *aff'd sub nom. Davis v. City of Apopka*, 78 F.4th 1326 (11th Cir. 2023). Jury instructions and verdict forms, when read as a whole, accurately reflect the law and enable the jurors to understand the issues without being misled. *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996). Inconsistencies between jury instructions and verdict forms render them defective. *Worsham v. A.H. Robins Co.*, 734 F.2d 676, 690 (11th Cir. 1984). Such inconsistencies render the jury instructions and the verdict forms "erroneous and prejudicial" and will mislead the

jury, requiring a new trial where those issues are not rectified before they reach the
jury. *Davis v. Apopka*, 2020 WL 4757047, at *3.

## II.    The Undisputed Evidence Established That Prudential's Fraud Claims Are Barred by the Statute of Limitations

The statute of limitations is a procedural statute that establishes the time period
during which a cause of action must be commenced. *Major League Baseball v. Morsani*,
790 So. 2d 1071, 1074–75 (Fla. 2001) (explaining that the statute of limitations exists
to "protect defendants from unfair surprise and stale claims"). Actions for fraud are
subject to a four-year statute of limitations. Fla. Stat. § 95.11(3)(i). Fraud cases must
begin "when the plaintiff discovers, or should have discovered with due diligence, the
facts giving rise to the fraud." *Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257,
1262 (M.D. Fla. 2018) (quoting Fla. Stat. § 95.031(2)(a)).

Accordingly, in their Rule 50 motion for directed verdict made at the close of
Prudential's case, the Gardinas argued "now that the evidence is in … there are no
disputed issues of fact, in that the undisputed testimony is that Prudential knew at least
by 2016 that their clients were allegedly committing fraud." *See* ECF No. 223 at 4:21-
24. The Gardinas explained that the evidence presented at trial made clear that
Prudential's causes of action in connection with Carol Gardina's policy (Counts I, II,
III, V and VII of the Amended Complaint) were barred by the statute of limitations.
ECF No. 223 at 4:25-5:3).

Indeed, the unrebutted trial testimony revealed that Prudential discovered the
facts giving rise to the purported fraud by no later than 2016, seven years before

Prudential commenced this action for fraud. ECF No. 223 at 5:4-7. Specifically,
Prudential conducted video surveillance of Mrs. Gardina in 2016. Prudential's internal
referral form states the reason for requesting surveillance as, "Red Flag Trigger-State
reason for SIU Involvement: Activity level inconsistent with ADL needs." See Joint
Trial Exhibit 113. On May 12, 2016 Prudential summarized the results of the 2016
surveillance as follows: "VIDEO was obtained of the claimant walking, standing,
bending, carrying items, assisting her spouse with carrying a mattress, carrying a small
table, checking the mail and entering and exiting the residences and vehicle. The
claimant was observed to ambulate normally without the use of any visible medical
devices." See Joint Trial Exhibit 116.

Stephen Dube testified during trial that Prudential's surveillance investigator
positively identified Mrs. Gardina as the person in the 2016 surveillance video. *See*
ECF No. 223 at 5:10-22; ECF No. 212 at 5:20-25. The video was sent to Prudential
with the positive identification included. ECF No. 212 at 6:1-4. Prudential did not sue
for fraud after that surveillance video was turned over in 2016, claiming they could not
positively identify her in the video. ECF No. 212 at 6:5-12.

Prudential surveilled Mrs. Gardina again in 2022. ECF No. 215 at 36:2-5.
Prudential manager Geoffrey Camlin testified during trial that Mrs. Gardina was
"similarly very active" in both the 2016 and the 2022 videos. ECF No. 223 at 5:13-18.
ECF No. 215 at 36:2-5. He then confirmed that Prudential waited seven years before
filing suit against Mrs. Gardina, stating:

Q      But you said that Prudential had doubts about Carol's identity in the 2022 video, correct?
A      We did. We confirmed that at a benefit eligibility assessment later.
Q      And when you had your doubts, did you go back and look at the 2016 surveillance?
A      We came across the 2016 surveillance, and it did appear to be the same person.
Q      And so Prudential had that surveillance in their files for seven years before they sued Mrs. Gardina, correct?
A      Correct.

ECF No. 215 at 36:11-21. This testimony from Prudential's corporate representative and its manager indisputably established that Prudential's cause of action for fraud against Mrs. Gardina accrued in 2016.

This testimony from Prudential's management alone should have been fatal to its effort to avert the statute of limitations. But when considered alongside the testimony of Prudential's 2016 investigator, Angello Tucciarelli, the defense's conclusion was inescapable. Tucciarelli testified that Prudential requested that his company conduct video surveillance of Mrs. Gardina in 2016. The only inference that could have been made from the fact that Prudential ordered this surveillance is that it was already suspicious of Mrs. Gardina's entitlement to LTC benefits and, thus, set out to investigate those suspicions. In fact, the 2016 investigation followed an activities investigation ordered by Prudential on Mrs. Gardina in 2012. See Trial Exhibit 111.

Tucciarelli's testimony was direct and clear as to the positive identification made by him and communicated to Prudential in May 2016. Prudential admitted the 2016 video commissioned by, and sent to it, shows substantially similar activities to those that Prudential captured in 2022. Trial evidence established that the investigator

was sent to the Gardinas' residence to obtain video and secret surveillance of Mrs. Gardina. She was found at the address where the investigator was sent, he recorded video of Mrs. Gardina, and he sent the footage back to Prudential with a report affirming a positive identification. Tucciarelli admitted the positive identification was easy to obtain. Trial evidence confirms that Prudential never took any action against the Gardinas after that video was turned over to it in 2016.

 Prudential did not raise any disputed issue of fact in opposition to the motion. Rather, Prudential argued only that other legal doctrines such as the continuing tort doctrine excused its tardiness.  ECF No. 223 at 8:5-24. The Court denied the motion as to this issue. While the Court concluded that there were disputed facts on this point, it did not identify any such facts. ECF No. 223 at 14:13-15:4.

Moreover, while Prudential admits that the jury needed to make factual determinations regarding when its cause of action accrued (*Id.*),  the jury was not asked to determine when the alleged fraud began, which has a direct bearing on determining the statute of limitations period. The jury received only a broad question regarding the amount of Prudential's damages. It was never asked to consider when Prudential should have discovered the underlying fraud. The jury should have been asked to analyze each and every claim form and identify by month and year each benefit that was obtained by fraudulent misrepresentation. ECF No. 228 at 7:5-6. Grouping all the claims together under a blanket question about total damages was inconsistent with Prudential's argument that each claim form constituted a separate tort. ECF No. 228 at 7:16-22.

The facts, and only inferences that can logically be made from the evidence, yield the conclusion that Prudential's claims in connection with the Carol Gardina policy accrued no later 2016.  Thus,  Prudential's claims for fraud in connection with the Carol Gardina policy fail as a matter of law because they were barred by the statute of limitations, and judgment in favor of the Gardinas on these claims is required.

### III.  The Jury Should Not Have Been Instructed Regarding the Continuing Tort Doctrine

#### a. Prudential's Pleadings Do Not Support the Continuing Tort Doctrine.

A plaintiff is only entitled to application of the continuing tort doctrine where it pleads a continuing tort in its complaint. *Nat'l Sourcing, Inc. v. Bracciale*, No. 8:17-CV-1950-T-36JSS, 2018 WL 6172430, at *3 (M.D. Fla. Nov. 26, 2018). Allegations that reference the ill effects of a prior tortious act are insufficient to establish a continuous tortious act. *Id.* at *2.

In *Bracciale*, the plaintiff's theory of liability against the defendant relied on discrete acts that occurred years apart. *Id.* The court concluded that there was no basis for applying the continuing tort doctrine, noting that allegations concerning ongoing ill consequences are not continuous torts which would toll the statute of limitations. *Id.* at *3. Thus, the court declined to apply the continuing tort doctrine to toll the statute of limitations because the plaintiff did not establish a continuing tort in the pleadings. *Id.*

Here, like in *Bracciale*, Prudential did not establish a continuing tort in its pleadings. Prudential did not plead individual fraudulent acts that each have their own

10

statute of limitations accrual period. ECF No. 228 at 94:13-25. Prudential instead alleged harm from an alleged fraudulent claim under the Carol Gardina policy and the effects that followed. ECF No. 228 at 95:16-21; *see also* [COMPLAINT CITATION]. The allegedly fraudulent acts were completed, and all facts giving rise to Prudential's claims were known to Prudential, by 2016. The monthly claim forms—central and essential to Prudential's misguided continuing tort theory—were merely rote formalities that were a condition to continued benefits under the claim which Prudential knew or should have known was fraudulent under the facts known to it. These merely served to continue benefit payments, but the continuing tort doctrine does not preserve these cascading harms. ECF No. 228 at 95:16-21; *Bracciale*, 2018 WL 6172430, at *3.

Even if Prudential did attempt to allege a continuing tort—which it did not—its vague allegations in the complaint would not support application of the continuing torts doctrine. Fraud claims are subject to heightened pleading standards. *Rutstein v. Viva 5 Group, LLC*, No. 8:24-CV-02417-WFJ-AAS, 2025 WL 500559, at *4 (M.D. Fla. Feb. 14, 2025). A plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud to satisfy the pleading standard. *Id.* (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006)). Prudential's fraud claims lack the requisite specificity for establishing continuous fraudulent acts warranting application of the continuing tort doctrine.

Because Prudential did not properly allege nor establish continuing torts, the continuing tort doctrine did not apply to toll the statute of limitations. Thus, judgment in favor of the Gardinas is required.

### b. The Continuing Tort Doctrine Does Not Apply to Claims that Were Discovered or Should Have Been Discovered.

In limited circumstances, the continuing violation doctrines permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period. *Ctr. For Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).

The Eleventh Circuit has narrowly limited the scope of the continuing violation doctrine. *Crossman v. Asset Acceptance, LLC*, No. 5:14-CV-115-OC-10, 2014 WL 2612031, at *4 (M.D. Fla. June 11, 2014) (stating the continuing violation doctrine is typically applied only in employment discrimination cases) (citing *Hamilton*, 453 F.3d at 1335)).[1]

It is limited to "situations where a reasonably prudent plaintiff would have been unable to determine that a violation had previously occurred." *Hipp v. Liberty Nat'l Life*

---

[1] The continuing tort doctrine has typically been applied to cases demonstrating a pattern of conduct affecting multiple potential claimants. *See e.g. Harper v. Acts Ret.-Life Communities, Inc.*, 2022 WL 11295918, at *2 (S.D. Fla. Sept. 22, 2022), *report and recommendation adopted*, 2022 WL 11206627 (S.D. Fla. Oct. 19, 2022); (quoting *In Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) (continuing violation doctrine applies to cases brought under the Fair Housing Act ..., "where 'a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, b-ut an unlawful practice that continues into the limitations period'"); *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992) (analyzing continuing violation theory in the context of a Title VII case)).

*Ins. Co.*, 252 F.3d 1208, 1222 (11th Cir. 2001). "If an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine[.]" *Id.; see also Wood v. Briarwinds Condo. Ass'n Bd. of Directors*, 369 Fed. Appx. 1, 4 (11th Cir. 2010) ("In the case of a continuing violation, the statute of limitations will run from the moment the violation begins if the violation continues only because of the plaintiff's knowing failure to seek relief.").

Here, as demonstrated above, the evidence adduced at trial established that Plaintiff discovered the facts giving rise to the purported fraud by no later than 2016, seven years before Plaintiff commenced this action for fraud. ECF No. 223 at 5:4-7. The continuing tort doctrine does not relieve a plaintiff from the obligation to exercise reasonable prudence. But the Court's instructions to the jury and the confounding verdict form remove the requisite prudence that the Eleventh Circuit mandates. The Court's instruction to the jury on the continuing tort doctrine enabled Prudential to evade its failure to recognize what it set out to discover—and in fact did discover back in 2016. *See* ECF No. 228 at 29:16-21.

### c. The Alleged Fraud was the Product of a Completed Act that Prudential was on Notice to Act Upon

"The continuing doctrine distinguishes between a single act that causes multiple, cascading harms, and recurrent, repetitive acts excepted from running the statute of limitations." *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1042 (11th Cir. 2014) (discussing Florida law). A continuing tort is "established by continual

tortious *acts,* not by continual harmful effects from an original, completed act." *Joseph v. Bernstein*, No. 13-24355-CIV, 2014 WL 4101392, at *10 (S.D. Fla. Aug. 19, 2014), *aff'd,* 612 Fed. Appx. 551 (11th Cir. 2015) (internal quotations omitted).

In determining whether a practice constitutes a "continuing violation," a court must distinguish between "the present consequence of a one-time violation, which does not extend the limitations period, and the continuation of the violation into the present, which does." *Harper v. Acts Ret.-Life Communities, Inc.*, No. 22-80210-CIV, 2022 WL 11295918, at *2 (S.D. Fla. Sept. 22, 2022) (quoting *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992)). Key facts to consider in applying the continuing tort doctrine are (1) whether any acts occurred within the limitations period; and (2) whether these acts are sufficiently similar to qualify as "continuing" the prior events. *Winn-Dixie Stores*, 746 F. 3d 1008, 1044. "Relying on this limitation, courts regularly dismiss continuing violation claims on the grounds that plaintiffs first became aware of the violations outside the limitations period," like Prudential in the instant case. *Harper*, 2022 WL 11295918, at *2.

*Bernstein* is instructive. 2014 WL 4101392, at *10–11. There, the plaintiff alleged he was induced into buying a life insurance policy that he did not understand. *Id.* at *10. Seeking to apply the continuing violation doctrine, the plaintiff suggested that each payment he made on the policy restarted the statute of limitations because each payment constituted a continuation of the defendants' fraud. *Id.* The Southern District, citing *Winn-Dixie Stores,* 746 F.3d 1008, 1042, examined whether these acts supported

14

application of the continuing tort theory. *Id.* The court disagreed with the plaintiff, concluding that the plaintiff's claims are based on continuing harmful effects from an original act, not continual tortious acts committed by the defendants. *Id.* at *11. The court therefore held that the continuing violation doctrine was inapplicable, and the plaintiff's argument that his continued payments constitute a continuing fraud is unavailing. *Id.*

Similarly, in *Effs v. Sony Pictures Home Entm't, Inc.*, 197 So. 3d 1243, 1245 (Fla. 3d DCA 2016), a Florida appellate court surveyed the law on the continuing tort doctrine, concluding that it did not apply to the plaintiff's claim for tortious interference with business relations. The lower court granted summary judgement on the statute of limitations. The appellate court affirmed, holding that the continuous tort doctrine did not save the plaintiff's claims. It stated that:

> the tort was not continual in nature merely because Sony Pictures made subsequent distribution payments. These additional distribution payments were merely "harmful effects from an original, completed act." *Suarez*, 987 So.2d at 686 (quoting *Horvath*, 540 N.W.2d at 763). Although these additional distribution payments could have potentially increased Effs' claimed damages, they did not delay the cause of action from accruing. Because the "continuing tort" doctrine is not applicable in the instant case, we conclude that the trial court properly determined that the cause of action was barred by the four-year statute of limitations.

*Id.*

Prudential's claims, like those in *Bernstein* and *Effs*, were not based on continual tortious acts committed by the Gardinas. The "Original Sin" forming the basis of

15

Prudential's claims is constant: that the Gardinas sought benefits under
Mrs. Gardina's policy which Prudential claims as fraudulent. ECF No. 228 at 33:15-
18.

Prudential complained of continuing harmful effects from the original 2002 act.
ECF No. 228 at 33:19-24. The controlling law does not allow Prudential to continue
to rely on the Gardinas' purported misrepresentations after the wrongdoing had been
made apparent. ECF No. 228 at 33:11-14. Prudential therefore could not rely on the
continuing violation doctrine to circumvent the statutory requirement of filing suit
within the limitations period for a fraud claim. ECF No. 228 at 33:15-18; 70:22-71:5.

Instructing the jury regarding the continuing tort doctrine was a substantial error
that resulted in a miscarriage of justice.

### d. The Inconsistent Jury Instructions and Verdict Form Confused and Mislead the Jury.

The jury should be given instructions that enable them to make their findings
on each issue. *Bank S. Leasing, Inc. v. Williams*, 778 F.2d 704, 706–07 (11th Cir. 1985).
Deficient instructions are likely the source of an incorrect verdict, which in itself
creates a substantial injustice. *Id.* The harm from deficient instructions is compounded
where the instructions are inconsistent with the verdict form given to the jury.
*Worsham*, 734 F.2d at 690; *McNely*, 99 F. 3d at 1072. *See also* ECF No. 229 at 5:10-21.

Here, the jury instructions—which were deficient on their own for the reasons
stated above—were also inconsistent with the verdict form. ECF No. 229 at 4:15-5:3.
The continuing tort doctrine's placement on the verdict form was confusing and

16

misleading for the jury. ECF No. 229 at 11:7-11. The logical, correct order would have followed the actual order that the instructions were given. That is to instruct on the statute of limitations followed by exceptions such as the continuing tort doctrine. ECF No. 228 at 109:20-110:1. This would allow the continuing tort doctrine to have been treated in the same sequence and as an exception to the statute of limitations. ECF No. 229 at 12:15-22.

Ordering the continuing tort doctrine before the statute of limitations on the verdict form was prejudicial. ECF No. 229 at 12:18-20. The sequencing in the verdict form prevented the jury from properly considering the statute of limitations defense. It was also incongruous with the jury instructions and, thus, mislead the jury.

The Court itself recognized the instructions contained on the verdict form were deficient on the continuing tort doctrine, but it proceeded with the form anyway. See ECF No. 229 at 10:1-7. During the charge conference, the Court expressly recognized the need to correct the verdict form instruction on the continuing tort doctrine. ECF No. 229 at 10:1-4. The parties argued over these instructions and Prudential's initially proposed verdict form, and when they could not agree on language for the verdict form, the Court fashioned its own remedy. ECF No. 229 at 10:1-4. Despite the existential disagreement between the parties on application of the doctrine, they each agreed that the Court's proposed edit added to confusion to the verdict form. However, rather than work toward a correct instruction on the verdict form, the Court simply reverted to the original language that it had already determined was incorrect or

insufficient. ECF No. 228 at 124:23-125:3. That was the form that the jury received, and it tainted the jury's verdict. Accordingly, a new trial should be granted.

## IV.  Prudential Did Not Establish Fraud as to the Claims Against George Gardina Under His Policy

The great weight of the evidence adduced at trial did not reasonably support the claims asserted by Prudential as directed to Mr. Gardina's policies, and therefore, judgment as a matter of law on this issue is proper.

Prudential admitted at trial that it does not have any reliance damages. ECF No. 223 at 6:12-13. The undisputed trial testimony is that Mr. Gardina first submitted a claim under his LTC policy in 2016. ECF No. 223 at 6:13-14. Prudential stopped paying him in July of 2020, when it terminated his benefits. ECF No. 223 at 6:14-15.

However, the undisputed evidence showed that Prudential did not seek restitution as to the benefits it paid during this four-year period. ECF No. 223 at 6:16-18; ECF No. 212 at 26:21-27:1. The evidence also showed that Prudential denied Mr. Gardina's new claim that he made in May of 2022. ECF No. 223 at 6:19-22. Mr. Camlin admitted that because Prudential did not make any benefit payments, there could be no reliance. ECF No. 223 at 6:20-22.

Further, Prudential cannot rely on the costs it incurred to investigate the alleged fraud. This argument is antithetical to Prudential's theory of the case. Prudential undertook these investigations because it did *not* believe the Gardinas' representations on their claim forms. Thus, had Prudential relied on the Gardinas' representations, it

18

would never have sought to investigate the Gardinas and would not have incurred the expenses for doing so.

Prudential thus did not introduce any evidence of how it was damaged by any fraud allegedly committed under Mr. Gardina's policy. ECF No. 223 at 6:23-7:2. Damages are the final element needed to prove a fraud claim. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (holding that a party acting in reliance on a misrepresentation must demonstrate a consequent injury). Given that the evidence established Prudential did not suffer damages, its claims for fraudulent misrepresentation, fraudulent concealment, and conspiracy to commit fraud all failed as a matter of law. Accordingly, the great weight of the evidence did not support the jury's verdicts on these claims.

The same conclusion applies to Prudential's claims that Carol Gardina conspired to commit fraud under George Gardina's policy. ECF No. 223 at 7:3-5. There was zero evidence adduced at trial that Mrs. Gardina participated in any part of Mr. Gardina's claim submission. Prudential did not advance a single piece of evidence at trial that could reasonably support any nexus between Mrs. Gardina and the fraud theories directed to Mr. Gardina's policy. Prudential did not ask Mrs. Gardina a single question about George and his policy. ECF No. 223 at 7:4-5. Thus, there was not any evidence from which the jury could find for the elements of Prudential's fraud claims.

CONCLUSION

For the reasons stated, the Gardinas are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 50(b), or at a minimum a new trial under Federal Rule of Civil Procedure 59.

Dated: April 30, 2025.            Respectfully submitted,

BENRUBI LAW, P.A.
*Counsel for Defendants*
6501 Congress Avenue, Suite 118
Boca Raton, FL 33487
Tel: (561) 910-8650
rbenrubi@benrubilaw.com (*primary*)
cgarcia@benrubilaw.com (*secondary*)

By: */s/ Richard M. Benrubi*
        Richard M. Benrubi, Esq.
        Florida Bar No. 796573

- and -

BECKER & POLIAKOFF, P.A.
Kevin Markow, Esq.
Florida Bar No.: 66982
*Counsel for Defendants*
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Tel: (954) 987-7550 | Fax: (954) 985-4176
kmarkow@beckerlawyers.com (*primary*)
ygomezrivera@beckerlawyers.com (*secondary*)
CourtMail@beckerlawyers.com (*secondary*)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 30th day of April 2025, a true and correct copy of the foregoing has been served by electronic mail to all counsel on the attached Service List.

> **ANDREW S. AZARMI, ESQ.**
> **SEENA FOROUZAN, ESQ**.
> Dentons US LLP
> 1999 Harrison Street, Suite 1300
> Oakland, CA 94612
> Telephone: (415) 882-5000
> Facsimile: (415) 882-0300
> Email: *Andrew.Azarmi@dentons.com*
> *Seena.Forouzan@dentons.com*
>
> *Attorneys for Plaintiff*

By: /s/ *Richard M. Benrubi*

RICHARD M. BENRUBI, ESQ.
*Counsel for Defendants*

21