UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

     Plaintiff,

v.                                   Case No: 6:23-cv-1125-JSS-DCI

CAROL GARDINA and GEORGE
GARDINA,

     Defendants.

_____/

## ORDER

     Defendants renew their motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and move for a new trial pursuant to Federal Rule of Civil Procedure 59.  (Dkt. 243.)  Plaintiff opposes the motion.  (Dkt. 251.)  Upon consideration, the court denies the motion.

## BACKGROUND

     Defendants Carol Gardina and George Gardina are married.  (Dkt. 228 at 45:18–20.)  On February 8, 2002, Plaintiff issued two long-term care insurance policies to Defendants, one to Mr. Gardina and one to Mrs. Gardina.  (Dkts. 202-1, 202-2.)  The policies provided long-term care benefits to Defendants if they had a chronic illness or disability as defined in the policies.  (Dkt. 202-1 at 6; Dkt. 202-2 at 6.)  The policies required Defendants to undergo reassessment of their health to determine continuing eligibility under the policies.  (Dkt. 222 at 87:18–89:23; Dkt. 202-1 at 15,

Dkt. 202-2 at 15.) These assessments were typically conducted by a registered nurse. (Dkt. 222 at 87:18–20.) At these assessments, Defendants were required to accurately provide health information so Plaintiff's assessors could complete benefit eligibility forms. (*See* Dkts. 202-6, 202-14, 202-20, 202-22, 202-28.) Because Mrs. Gardina also claimed she had a severe cognitive impairment as defined by her policy, she was required to provide accurate information during the cognitive test portion of her eligibility reassessments. (Dkt. 202-1 at 6; Dkt. 202-18 at 6–10; Dkt. 202-20 at 7–11; Dkt. 202-24 at 5–8; Dkts. 202-62, 202-63.)

Following an investigation, Plaintiff suspected that the Gardinas conspired to defraud Plaintiff. (Dkts. 202-57, 202-73, 202-74.) On June 14, 2023, Plaintiff filed this action. (Dkt. 1.) Plaintiff believed that the Gardinas provided inaccurate information regarding their health on their claim forms and during benefit eligibility assessments. Plaintiff also suspected that the Gardinas staged demonstrations regarding their health during the assessments to appear to Plaintiff that they met the policies' criteria for benefits. (Dkt. 25 ¶¶ 1–7.) Plaintiff paid Ms. Gardina under her policy from 2002 to 2023. (Dkt. 202-121.) Plaintiff sought legal and equitable damages against Defendants for the following claims: fraudulent misrepresentation (count I), fraudulent concealment (count II), declaratory judgments that Defendants are not entitled to coverage under the policies (count III - Mrs. Gardina; count IV - Mr. Gardina), declaratory judgments that Defendants' policies are void (count V - Mrs. Gardina; count VI - Mr. Gardina); and civil conspiracy (count VII). (Dkt. 25 ¶¶ 90–131.) Defendants counterclaimed, seeking damages against Plaintiff for breach of contract

for denying Defendants' claims for benefits under their policies (count I - Mrs. Gardina; count II - Mr. Gardina). (Dkt. 33.) The court conducted a nine-day jury trial in March 2025. (Dkts. 165, 169, 172, 180, 181, 186, 190, 195, 196.) During trial, but before the case was submitted to the jury, Defendants moved for judgment as a matter of law, pursuant to Federal Rule of Civil Procedure 50(a). (Dkt. 188.) The court denied the motion. (Dkt. 194.) Following closing statements, the court instructed the jury. (Dkt. 196 at 1; Dkt. 197.) The jury deliberated and reached a verdict for Plaintiff and against Defendants. (Dkts. 198, 200.)

Specifically, regarding Plaintiff's claims for fraudulent misrepresentation and concealment, the jury found that Defendants knowingly made fraudulent misrepresentations and concealments regarding Mrs. Gardina's health that Plaintiff detrimentally relied on in approving her for benefits. (Dkt. 198 at 1–2.) The jury also found that Defendants' fraudulent misrepresentations and concealments with respect to Mrs. Gardina's policy continued past June 14, 2019. (*Id.* at 3.) For Mr. Gardina's policy, the jury found that Mr. Gardina knowingly made fraudulent misrepresentations and concealments regarding his health that Plaintiff detrimentally relied on in approving him for benefits. (*Id.* at 1.) As for Plaintiff's civil conspiracy claim, the jury found that the Gardinas conspired to defraud Plaintiff. (*Id.* at 2.) The jury determined that Ms. Gardina's last unlawful act or lawful act done by unlawful means done in furtherance of the conspiracy was on May 3, 2023, and Mr. Gardina's was on December 1, 2024. (*Id.* at 3.) The jury found by clear and convincing evidence that Mr. Gardina was guilty of intentional misconduct such that punitive damages

- 3 -

should be awarded.  (*Id.* at 4.)  As to Defendants' breach of contract counterclaims, the jury found that Defendants defrauded Plaintiff, which Plaintiff relied on and caused it to change its position for the worse.  (*Id.* at 5.)

The jury awarded Plaintiff $1,930,129 in compensatory damages owed by Ms. Gardina and $12,496 in compensatory damages owed by Mr. Gardina.  (*Id.* at 4.) After the jury rendered this verdict, the court proceeded with the punitive damages phase of the trial against Mr. Gardina.  (Dkt. 196 at 2.)  The jury heard additional evidence from the parties before the court further instructed the jury on punitive damages.  (*Id.*; Dkt. 199.)  After deliberating, the jury awarded Plaintiff $20 in punitive damages owed by Mr. Gardina.  (Dkt. 200.)

## APPLICABLE STANDARDS

### A. Rule 50(b)

Federal Rule of Civil Procedure 50(a)(2) provides that a party may move for judgment as a matter of law "before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  "The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment."  *Id*.  If a district court does not grant the motion under Rule 50(a), the movant may file "a renewed motion" under Rule 50(b) after trial.  Fed. R. Civ. P. 50(b).  "'The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under [Rule] 50(a).'"  *McGinnis v. Am. Home Mortg.*

*Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (alteration adopted) (quoting *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007).

A Rule 50(b) motion may be granted—and judgment as a matter of law entered— only if "'there is no legally sufficient evidentiary basis for a reasonable jury to find' for the non-moving party." *Chaney*, 438 F.3d at 1227 (quoting *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001)); *accord Lipphardt*, 267 F.3d at 1186 (explaining that a district court may "not second-guess the jury or substitute" its judgment for that of the jury if the jury's "verdict is supported by [legally] sufficient evidence" (quotation omitted)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Cleveland v. Home Shopping Network Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (quotation omitted)). Therefore, a motion for judgment as a matter of law will be granted only if "viewing the evidence in its entirety and drawing all reasonable inferences in favor of the non[-]moving party, no reasonable jury could reach a contrary verdict." *Smith v. United States*, 894 F.2d 1549, 1552 (11th Cir. 1990) (citing *Thibodeau v. United States*, 828 F.2d 1499, 1503 (11th Cir. 1987)). "If substantial evidence exists in opposition to a motion for judgment as a matter of law, such that reasonable people, exercising impartial judgment, could reach different conclusions, then the motion must be denied." *Viart v. Bull Motors, Inc.*, 149 F. Supp. 2d 1346, 1347 (S.D. Fla. 2001).

**B. Rule 59**

After a jury trial, a district court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A party may seek a new trial on the grounds "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the [movant] and may raise questions of law arising out of alleged substantial errors" related to evidence or jury instructions.  *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).  Additionally, pursuant to Federal Rule of Civil Procedure 61, "a new trial is warranted only where [an alleged] error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice')."  *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 807 (11th Cir. 2017) (quoting *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004)).  To satisfy this standard, the moving party "bears the burden of proving that the [alleged] error probably had a substantial influence on the jury's verdict."  *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007) (quotation omitted).

In deciding whether to grant a motion for new trial, a district court must not substitute its judgment for that of the jury, and therefore, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence."  *Lipphardt*, 267 F.3d at 1186 (quotation omitted).  "Although a trial judge cannot weigh the evidence when confronted with a motion [for judgment as a matter of law], in a motion for a new

- 6 -

trial[,] the judge is free to weigh the evidence." *Rabun v. Kimberly–Clark Corp.*, 678 F.2d 1053, 1060 (11th Cir. 1982) (quoting *King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1115 (5th Cir. 1980)). "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). "[M]otions for a new trial are committed to the discretion of the trial court," *Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999), but district courts "should give great deference to the jury's verdict and grant a new trial sparingly" *OneSource Facility Servs., Inc. v. Mosbach*, No. 2:05-cv-525-FtM-34DNF, 2008 WL 11430040, at *8 (M.D. Fla. Nov. 18, 2008).

## ANALYSIS

Defendants renew their previous request for judgment as a matter of law arguing that Plaintiff's fraud claims arising from Mrs. Gardina's policy are barred by the statute of limitations and that, Plaintiff did not prove it suffered damages from Mr. Gardina's fraud related to his policy or prove Mrs. Gardina conspired to commit fraud related to Mr. Gardina's policy. (Dkt. 243 at 6–10, 18–19.) Defendants alternatively move for a new trial arguing that the jury should not have been instructed to consider the continuing tort violation doctrine, the jury should have determined whether Plaintiff's claims were barred by the statute of limitations before determining whether the continuing violation doctrine applied on the verdict form, and Plaintiff did not prove it suffered damages from Mr. Gardina's fraud to obtain benefits under his policy, or prove Mrs. Gardina conspired to commit fraud to obtain benefits from Mr. Gardina's

policy.  (Dkt. 243 at 10–18.)  The court discusses Defendants' statute of limitations arguments under Rule 50(b) before addressing their continuing tort doctrine arguments under Rule 59.  Then, the court considers Defendants' arguments related to Mr. Gardina's policy under Rules 50(b) and 59.

### A. Rule 50(b) – Statute of Limitations

Federal jurisdiction here is based on diversity of citizenship under 28 U.S.C. § 1332(a).  (Dkt. 25 ¶ 12.)  Thus, Florida substantive law controls.  *See Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *see also Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232 (11th Cir. 1983) ("[A] state created cause of action accrues . . . when local law so declares." (quotation omitted)).  Generally, under Florida law, "a cause of action accrues . . . when the last element of the cause of action occurs." *Davis v. Monahan*, 832 So. 2d 708, 709 (Fla. 2002); *see* Fla. Stat. § 95.031(1). "An action founded upon fraud under [Fla. Stat. § 95.11(3)(i)] . . . must be begun within [a four-year period] . . . with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence. . . ."  Fla. Stat. § 95.031(2)(a).  "Whether [a plaintiff,] by the exercise of reasonable diligence, should have known [it] had a cause of action against the defendant is, ordinarily, an issue of fact which should be left to the jury." *Koehler v. Merril Lynch & Co.*, 706 So. 2d 1370, 1373 (Fla. Dist. Ct. App. 1998) (quotation omitted); *see also Hudak v. Econ. Rsch. Analysts, Inc.*, 499 F.2d 996, 1002 (5th Cir. 1974) (explaining that although Florida law "does not endorse a hear no evil, see no evil

approach [to fraud], neither does it require that an aggrieved party have proceeded from the outset as if [it] were dealing with thieves.").

Defendants maintain that as a matter of law, Plaintiff should have discovered their fraud after Plaintiff paid a private investigator to obtain video surveillance of Mrs. Gardina in 2016. (Dkt. 243 at 6–10.) Plaintiff responds that Defendants cherry-pick trial evidence to support their assertion, but when the court views all the evidence in Plaintiff's favor, the evidence is not overwhelmingly in Defendants' favor such that a reasonable jury could not reach a contrary conclusion. (Dkt. 251 at 10–14.) Defendants raised their statute of limitations argument in their Rule 50(a) motion, (*see* Dkt. 188 at 3–6; Dkt. 227 at 99:10–101:9), preserving it for the court's consideration under Rule 50(b). Even so, their argument fails because whether Plaintiff should have discovered Defendants' fraud in 2016 was a heavily disputed issue of fact at trial. To support their argument, Defendants rely on testimony from Plaintiff's corporate representative, Stephen Dube, Plaintiff's employee Geoffrey Camlin, and Angelo Michael Tucciarelli.[1] (Dkt. 243 at 7–9.)

Mr. Dube testified that he is Plaintiff's director of long-term care services, who assists Plaintiff if it suspects fraud, waste, and abuse. (Dkt. 222 at 74:1–5.) Plaintiff created this department in 2019. (*Id.* at 76:22–77:1.) According to Mr. Dube, Mrs.

---

[1] Defendants also seek to rely on the parties' Joint Trial Exhibits 113 and 116. (Dkt. 243 at 7.) A review of the parties' admitted joint exhibit list shows that no such exhibits were identified or admitted during the trial. (*See* Dkt. 204.) Presumably, Defendants refer to Plaintiff's Exhibits 113 and 116 (Dkts. 202-68, 202-69; *see also* Dkt. 223 at 87–88; Dkt. 224 at 122), which the court considered in ruling on the motion.

Gardina was referred by Plaintiff's special investigation unit for video surveillance in 2016 because Plaintiff suspected her activity level may have been inconsistent with her activity of daily living needs—her need for assistance to bathe, eat, dress, transfer, and use the bathroom. (Dkt. 223 at 87:5–8, 88:16–89:3, 89:13–21; *see also* Dkt. 202.) Mr. Tucciarelli testified that he is a private investigator who worked for a private investigation company hired by Plaintiff to obtain video surveillance of Mrs. Gardina in 2016. (Dkt. 222 at 39:23–40:2, 41:13–14, 56:3–5.) The jury saw video surveillance taken in April and May 2016 during his testimony. (*Id.* at 44:2–47:17; Dkt. 202-73.)

According to Mr. Dube, Plaintiff did not suspect that Defendants were committing fraud to receive benefits under Mrs. Gardina's policy in 2016. (Dkt. 223 at 90:8–22; Dkt. 202-20.) This is because it relied on Defendants' representations made during Mrs. Gardina's October 2016 benefit eligibility assessment as accurate and truthful to continue paying her benefits. (*Id.*) He further testified that Plaintiff did not know what Mrs. Gardina looked like to confirm her identity in 2016. (Dkt. 223 at 91:8–11.) During Mrs. Gardina's October 2016 assessment, Mr. Gardina, as Mrs. Gardina's power of attorney and primary informal caregiver, provided information about Mrs. Gardina's ability to perform activities of daily living to the assessor. (Dkt. 202-20 at 2, 4, 6.) Mr. Gardina represented that he or a home health aide assisted his wife with various activities of daily living that she could not do on her own, such as getting dressed, walking, and bathing. (*Id.* at 12–19.) Mrs. Gardina scored six out of thirty points on the cognitive test during this assessment. (*Id.* at 7–9.) During the test, Mrs. Gardina represented that she did not know what month or year it was or how to

spell the word "world" backwards and could not recall three words the assessor had told her minutes earlier. (*Id.* at 7.) Mr. Dube testified that Plaintiff did not confirm Mrs. Gardina as the woman in the 2016 video surveillance until 2023. (Dkt. 223 at 91:13–92:5.)

Mr. Camlin works on Plaintiff's fraud, waste, and abuse team with Mr. Dube. (*Id.* at 224:8–13, 225:5–8.) He testified that the team investigated Mr. Gardina after receiving a benefit eligibility assessment from Mr. Gardina in June 2022. (Dkt. 224 at 55:6–19, 56:2–57:5; Dkt. 202-28.) Through this investigation, Mr. Camlin directed one of Plaintiff's video surveillance vendors to obtain video surveillance of Mr. Gardina. (Dkt. 224 at 59:5–60:11.) According to Mr. Camlin, there was a woman in the video who was later identified as Mrs. Gardina. (*Id.* at 61:3–62:10; Dkt. 223 at 223:14–17; Dkt. 202-74.) Mr. Camlin testified he was unsure at first if the woman with Mr. Gardina in the 2022 surveillance was Mrs. Gardina, based on Defendants' representations about her condition over the past twenty years. (Dkt. 224 at 61:3–62:10.) He explained that Plaintiff became suspicious of Mrs. Gardina potentially misrepresenting herself at her benefit eligibility assessments based on the June and July 2022 video surveillance that it obtained of Mr. Gardina. (*Id.* at 69:12–19, 79:17–80:20; Dkt. 202-57.) However, Mr. Camlin maintained that Plaintiff was not sure that it was Mrs. Gardina, so he started trying to confirm her identity. (Dkt. 224 at 69:12–70:18, 71:4–73:12; 79:18–21, 86:18–88:11.) According to Mr. Camlin, Plaintiff confirmed Mrs. Gardina's identity after taking a photo of her at her April 2023 benefit eligibility assessment. (*Id.* at 89:6–14; Dkt. 202-30 at 6; Dkt. 202-139.)

When the court considers the evidence in the record and draws all reasonable inferences in Plaintiff's favor, Defendants are not entitled to judgment as a matter of law because a reasonable jury could have determined that Plaintiff should not have discovered Defendants' fraud upon obtaining the video surveillance in 2016. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 151 (2000) ("[A]lthough the court should review the record as a whole [when deciding a Rule 50 motion], it must disregard all [contradicted] evidence favorable to the moving party that the jury is not required to believe."); *Cleveland*, 369 F.3d at 1192 (explaining that a district court should deny a motion for judgment as a matter of law if there is a "legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on the issue"); *Smith*, 894 F.2d at 1552; *Viart*, 149 F. Supp. 2d at 1347. Accordingly, Defendants' renewed motion for judgment as a matter of law is denied on this basis.

## B. Rule 59 – Continuing Tort

Defendants argue that a new trial is warranted because the jury should not have been instructed to consider the continuing tort doctrine for three reasons. (Dkt. 243 at 10–16.) Because Defendants did not raise the three reasons in their Rule 50(a) motion, the court considers them only under Rule 59.[2] (*See* Dkt. 188; Dkt. 227 at 99:10–102:12.) *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 902–03 (11th Cir. 2004); Fed. R. Civ. P. 50 advisory committee's note to 2006 amendment ("Because the Rule 50(b)

---

[2] Defendants' Rule 50(a) motion mentions the continuing tort doctrine in a single footnote, which the court disregards as improperly incorporating by reference an argument made in another brief. (Dkt. 188 at 6 n.1.) *See* M.D. Fla. Loc. R. 3.01(f).

motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."). After providing an overview of the doctrine, the court discusses each reason in turn.

"In a continuing tort action, . . . the statute of limitations runs from the last tortious act." *Maddan v. Okaloosa County*, 358 So. 3d 834, 838 (Fla. Dist Ct. App. 2023). Florida law recognizes the doctrine. *See Seaboard Air Line R.R. v. Holt*, 92 So. 2d 169, 170 (Fla. 1956); *Pearson v. Ford Motor Co.*, 694 So. 2d 61, 67–68 (Fla. Dist. Ct. App. 1997) (applying the doctrine to fraud claims). A continuing tort is "established by continual tortious acts, not by continual harmful effects from an original, completed act." *Suarez v. City of Tampa*, 987 So. 2d 681, 686 (Fla. Dist. Ct. App. 2008) (quotation and emphasis omitted). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." *Id.* (quotation omitted). Thus, for the doctrine to apply, Plaintiff needed to provide evidence at trial that Defendants committed continuing tortious acts that would allow a jury to determine when Defendants' last tortious acts occurred. *See Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1044 (11th Cir. 2014) ("Florida courts have repeatedly stated that the question of 'whether the continuing torts doctrine applies to the facts of a case is for a trier of fact to decide.'" (alteration adopted) (quoting *Pearson*, 694 So. 2d at 67–68)).

First, Defendants contend that Plaintiff's fraud claims arising from benefits paid under Mrs. Gardina's policy stem from a single act—Mrs. Gardina filing a claim for

benefits under her policy in 2002—rather than continuing wrongful acts.  (Dkt. 243 at
13–16.)  Plaintiff responds that the court properly instructed the jury on the continuing
tort doctrine because the evidence supports the jury's determination that: Defendants
engaged in recurrent fraudulent misrepresentations and concealments past June 2019,
which Plaintiff relied on to continue paying Mrs. Gardina benefits.  (Dkt. 251 at 11–
14.)  Defendants cite *Effs v. Sony Pictures Home Entertainment, Inc.*, 197 So. 3d 1243 (Fla.
Dist. Ct. App 2016), and *Joseph v. Bernstein*, No. 13-24355-CIV, 2014 WL 4101392
(S.D. Fla. Aug. 19, 2014), to support their assertion that Mrs. Gardina filing a claim
to receive benefits in 2002 was a single act that Plaintiff suffered continuing harm from.
(Dkt. 243 at 14–15.)  Both cases are distinguishable.

In *Effs*, the plaintiff alleged that the defendant tortiously interfered with his
business relationship.  197 So. 3d at 1244.  The plaintiff claimed an ownership interest
in a movie based on an oral promise made with a third party.  *Id*.  That third party
purportedly gave the defendant an exclusive license deal for the movie without the
plaintiff's consent.  *Id*.  The plaintiff argued that each distribution payment that the
defendant subsequently paid to the third party was a continuing tortious act.  *Id*.  The
court rejected that argument and concluded that the statute of limitations started when
the plaintiff learned of the interference and had an attorney email the defendant, over
four years before filing the lawsuit.  *Id*. at 1244–45 ("Contrary to [the plaintiff's]
assertion, the tort was not continual in nature merely because [the defendant] made
subsequent distribution payments. These additional distribution payments were
merely harmful effects [from the] original, completed act [of entering the distribution

- 14 -

agreement].” (quotation omitted)).  In *Bernstein*, the pro se plaintiff alleged that he was

fraudulently induced to sign up for a life insurance policy he did not understand. 2014

WL 4101392, at *1–3.  At the motion to dismiss stage, the court determined that each

payment the pro se plaintiff made on his life insurance policy did not restart the statute

of limitations.  *Id.* at *10–11.  The court reasoned that the plaintiff's claims were “based

on continuing harmful effects from [the] original act” of inducing the plaintiff to sign

up for the policy.  *Id.* at *11.  Unlike the payments in *Effs* and *Bernstein*, the payments

at issue in this case did not arise from a single act.  The terms of the parties' agreement

did not require Plaintiff to pay out benefits under Mrs. Gardina's policy for over twenty

years based on Mrs. Gardina signing up for the policy, submitting one claim form, or

agreeing to one assessment.  (Dkts. 202-1, 202-2.)  The policy required ongoing

disclosures for continuing payouts.  (*Id.*)

Under Florida law, Defendants had a continual duty to disclose all material

facts related to Mrs. Gardina's health.  *See Gutter v. Wunker*, 631 So. 2d 1117, 1118–19

(Fla. Dist. Ct. App. 1994) (“[W]here a party in an arm's length transaction undertakes

to disclose information, all material facts must be disclosed.”); *Ramel v. Chasebrook

Const. Co.*, 135 So. 2d 876, 882 (Fla. Dist. Ct. App. 1961) (“[N]ondisclosure of a

material fact may be deemed fraudulent where the other party does not have equal

opportunity to become apprised of the fact.”).  At trial, Plaintiff provided evidence that

Mrs. Gardina's policy required ongoing reassessment to determine her continued

eligibility for benefits.  (Dkt. 202-1 at 11, 15, 24–25; Dkt. 222 at 131:5–134:6.)  Plaintiff

further provided evidence supporting that it relied on Defendants' representations over the years to keep paying Mrs. Gardina's benefits. (Dkt. 222 at 135:7–136:15.)

It was proper for the jury to weigh the information Defendants provided in Mrs. Gardina's claim forms and at her benefit eligibility assessments against the other evidence presented at trial to determine whether their conduct constituted a continuing tort. *See Winn-Dixie*, 746 F.3d at 1044 (explaining that in a continuing tort case, there are two key material factual disputes for the jury to resolve: "whether any acts took place within the limitations period and whether these acts were sufficiently similar to qualify as 'continuing' the prior events"). Therefore, after weighing the evidence and considering the evidence in Defendants' favor, the court cannot conclude that the jury's determination that Defendants engaged in recurrent fraudulent misrepresentations and concealments that Plaintiff relied on in continuing to pay Mrs. Gardina benefits past June 2019 is against the great weight of the evidence. (*See* Dkts. 174-1, 175-1, 191-1, 192-1, 202-1, 202-16, 202-17, 202-19, 202-20, 202-68, 202-74, 202-113, 202-114, 202-115, 202-116, 202-117, 202-118, 202-119, 202-121, 202-124, 202-131, 202-133; Dkt. 202-63 at 84–232; Dkt. 222 at 72:15–218:6; Dkt. 223 at 16:23–137:3; Dkt. 227 at 127:8–17, 136:16–161:21; Dkt. 228 at 43:20–54:5.) Accordingly, Defendants' motion for a new trial is denied on this basis. *See Lipphardt*, 267 F.3d at 1186.

Second, Defendants argue that the jury should not have been instructed to consider the continuing tort doctrine because Plaintiff did not allege Defendants engaged in continuing fraud regarding Mrs. Gardina's policy in the amended

complaint. (Dkt. 243 at 10–12.) Plaintiff responds that it did plead facts supporting this assertion. (Dkt. 251 at 15 n. 10.) The court agrees with Plaintiff. (*See* Dkt. 25 ¶¶ 1–6, 34–40, 53–71 (alleging fraud continuing until 2023).) *See also McMillian v. AMC Mortg. Servs., Inc.*, 560 F. Supp. 2d 1210, 1213 (M.D. Ala. 2008) (explaining that "the statute of limitations is an affirmative defense around which [Plaintiff is] not required to plead in [its] complaint"); *Wetzel v. A. Duda & Sons*, 306 So. 2d 533, 534 (Fla. Dist. Ct. App. 1975) ("The statute of limitations is an affirmative defense which a defendant may plead or waive. There is no requirement . . . that a plaintiff must affirmatively plead that he is not barred by the statute of limitations."). Accordingly, Defendants' motion for a new trial is denied on this basis.

Third, Defendants maintain that the jury should not have considered the continuing tort doctrine because, as a matter of law, Plaintiff should have discovered Defendants' fraud related to Mrs. Gardina's claim for benefits after obtaining video surveillance in 2016. (Dkt. 243 at 12–13.) Defendants restate their argument that the court has previously rejected in denying their renewed motion for judgment as a matter of law. As discussed above, whether Plaintiff should have known of Defendants' fraud in 2016 or whether Defendants' actions constituted continuing acts of fraud that recurred within the limitations period was sharply disputed by the parties. Therefore, considering Defendants' request for a new trial on this issue, the court will not "substitute [its] judgment for that of the jury on [this disputed question] of fact" but "must defer to the jury's determination." *Ard v. Sw. Forest Indus.*, 849 F.2d 517, 520, 522 (11th Cir. 1988). Thus, Defendants' motion for a new trial is denied on this basis.

In addition to arguing that instructing the jury on the continuing tort doctrine was error, Defendants assert that even if the jury properly considered the doctrine, it should have first decided whether Plaintiff, through due diligence, could have discovered Defendants' fraud before June 2019 before it considered whether the doctrine applied on the special verdict form. (Dkt. 243 at 16–18.) As with their other arguments about the doctrine, Defendants did not make this argument in their Rule 50(a) motion. (*See* Dkt. 288; *see also* Dkt. 227 at 99:10–102:12.) Therefore, the court considers this argument only under Rule 59. *See Doe*, 394 at 902–03.

District courts have "'wide discretion as to the style and wording employed' in jury instructions and verdict forms." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999) (quoting *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir. 1997)). When a party challenges the sufficiency of the jury instructions or verdict form, the court is to view the "jury instructions and verdict forms together rather than separately." *Id*. To warrant a new trial based on an erroneous jury instruction, "a party must establish that the challenged instruction was an incorrect statement of the law, and that it was probably responsible for an incorrect verdict leading to substantial injustice." *Busch v. County of Volusia*, 189 F.R.D. 687, 696 (M.D. Fla. 1999). "So long as the 'instructions, taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete[,] or otherwise subject to criticism.'" *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1289 (11th Cir. 2014) (quoting *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 585 (11th Cir. 2013).

As mentioned previously, if the jury determined the continuing tort doctrine applied, "the limitations period runs from the date the tortious conduct ceases." *See Halkey-Roberts Corp. v. Mackal*, 641 So. 2d 445, 447 (Fla. Dist. Ct. App. 1994). Thus, when the court considers the jury instructions and special verdict form together, (Dkts. 197, 198), Defendants fail to meet their burden of proving that an erroneous jury instruction was given. *Bhogaita*, 765 F.3d at 1289. Plaintiff had the burden of proving that the continuing tort doctrine applied. If the jury determined that Plaintiff carried its burden of proof on that issue, then there was no need to address whether Defendants had proved their statute of limitations defense. This is because if the jury determined the continuing tort doctrine applied, then the statute of limitations did not commence until after June 2019, or within the limitations period.

This conclusion is reinforced by the jury's decision in favor of Plaintiff on the conspiracy claim. (Dkt. 198 at 2–3.) Plaintiff's conspiracy claim was based on Plaintiff's underlying fraud claims against Defendants arising from benefits it paid under Mrs. Gardina's policy. (*See* Dkt. 25 ¶¶ 123–31.) *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999) ("Actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.") (applying Florida law) (quotation omitted). The jury determined that the last fraudulent acts Defendants took in furtherance of the conspiracy to defraud Plaintiff under Mrs. Gardina's policy were within the limitations period. (Dkt. 197 at 20; Dkt. 198 at 3.) Therefore, Defendants' motion for a new trial

is denied on this basis because the jury instructions and verdict form "properly express[ed] the law applicable to the case." *Bhogaita*, 765 F.3d at 1289.

### C. Rules 50(b) and 59 - Mr. Gardina's Policy

The court now turns to Defendants' arguments challenging the sufficiency of the evidence Plaintiff presented regarding Mr. Gardina's policy. (Dkt. 243 at 18–19.) Defendants made the arguments discussed below in their Rule 50(a) motion, (*see* Dkt. 188 at 6–7; Dkt. 227 at 101:11–101:11), preserving them for the court's consideration under Rule 50(b). Defendants maintain that judgment as a matter of law is warranted on Plaintiff's fraud claims because Plaintiff did not present evidence that it suffered damages caused by Mr. Gardina's fraud to obtain benefits from his policy. (Dkt. 243 at 18–19.) Plaintiff responds that it provided enough evidence to support the jury's conclusion that it was entitled to recover its costs incurred in investigating Mr. Gardina's fraud. (Dkt. 251 at 18–19.)

Defendants' motion is due to be denied on this basis for several reasons. The record citations provided by Defendants in support of their argument, (Dkt. 243 at 18–19 (citing Dkt. 223 at 6–7)), do not support their argument. The one record citation provided by Defendants that may support their argument, (*id.* at 18 (citing Dkt. 212 at 26:21–27:1)), directs the court to Mr. Dube's testimony that Plaintiff is not seeking to recover benefits paid under Mr. Gardina's policy. Yet regarding Mr. Gardina's policy, Plaintiff from the start in the amended complaint maintained that it was only seeking costs incurred "from investigating the Gardinas' [mis]conduct." (Dkt. 25 at 44.)

As mentioned, Mr. Camlin testified that Mr. Gardina was referred to Plaintiff's fraud, waste, and abuse division in June 2022.  He explained that Mr. Gardina's representations at his benefit eligibility assessment—for example, that Mr. Gardina was wheelchair-bound—did not match the activity seen on the video surveillance taken shortly after the assessment.  (Dkt. 224 at 60:16–61:2, 63:4–70:11, 69:3–11; Dkt. 202-28 at 11–16; *See* Dkts. 202-66, 202-74.)  The jury saw this video surveillance.  (Dkt. 221 at 184:24–185:2, 188:2–5, 190:2–217:5; *See* Dkt. 202-74.)  The evidence presented at trial supported that when Plaintiff sought to obtain video surveillance of Defendants as part of its investigation, it paid third-party vendors like Mr. Tucciarelli's former employer to acquire the surveillance. Mr. Camlin and Mr. Dube testified that the investigation into Mr. Gardina is what led Plaintiff to discover his fraud in connection with his policy and Mrs. Gardina's policy, as well as Mrs. Gardina's fraud in connection with her policy.  Wendy Butler, an investigator in Plaintiff's corporate investigation division, (Dkt. 224 at 129:22–7), also testified about Plaintiff's investigation into Mr. Gardina, (*id.* at 131:11–154:18).   Because a jury may credit this testimony, Plaintiff is allowed to recover the money it spent investigating Mr. Gardina. *See Steinbauer Assocs., Inc. v. Smith*, 599 So. 2d 746, 748 (Fla. Dist. Ct. App. 1992) ("One measure of damages for fraudulent misrepresentation is the pecuniary loss suffered as a result of the recipient's reliance on the misrepresentation.") (citing Restatement (Second) of Torts § 549(1)(b) (A.L.I. 1977)).

Defendants are not entitled to judgment as a matter of law because a reasonable jury could have determined that Plaintiff incurred pecuniary loss in investigating Mr.

Gardina for fraud.  *Id.*; *Reeves*, 530 U.S. at 151; *Cleveland*, 369 F.3d at 1192; *Smith*, 894 F.2d at 1552; *Viart*, 149 F. Supp. 2d at 1347.  Additionally, after weighing the evidence and considering the evidence in Defendants' favor, the court cannot conclude that the jury's determination that Mr. Gardina owes Plaintiff damages—arising from investigating him to discover what the jury determined was fraud—is against the great weight of the evidence.  (*See* Dkt. 222 at 72:15–218:6; Dkt. 223 at 223:23–249:17; Dkt. 224 at 21:1–128:6, 129:6–173:7; *see also* Dkts. 191-1, 198, 202-40, 202-50, 202-52, 202-61, 202-66, 202-73, 202-74, 202-112.)  Accordingly, Defendants' renewed motion for judgment as a matter of law and new trial is denied on this basis.  *See Reeves*, 530 U.S. at 151; *Lipphardt*, 267 F.3d at 1186; *Cleveland*, 369 F.3d at 1192.

Defendants further contend that judgment as a matter of law is warranted on Plaintiff's claim that Mrs. Gardina conspired to commit fraud under Mr. Gardina's policy.  (Dkt. 243 at 19.)  Defendants' motion is due to be denied on this basis because Plaintiff did not plead this conspiracy theory, and thus the theory was not an issue at the trial.  (Dkt. 25 ¶¶ 123–31.)  *See Peer v. Lewis*, No. 06-60146-CIV-TORRES, 2008 WL 2047978, at *8 (S.D. Fla. May 13, 2008) (rejecting a Rule 50(b) argument as meritless where it focused on a non-issue), *aff'd*, No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009)).  Neither the jury instructions nor the special verdict form asked the jury to decide this issue.  (Dkt. 197 at 20; Dkt. 198 at 2.)  Instead, the jury was instructed to consider whether Defendants "conspired with each other to defraud" Plaintiff.  (Dkt. 197 at 20.)  To the extent Defendants move for a new trial on this basis, their motion is denied for the same reason.

**CONCLUSION**

Accordingly, Defendants' Renewed Motion for Directed Verdict, or, in the alternative, Motion for New Trial (Dkt. 243) is **DENIED**.

**ORDERED** in Orlando, Florida, on August 8, 2025.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record